Appeal of Chartiers Valley School District and of Township of Scott From Assessment of Property of Connecticut General Life Insurance Company. Chartiers Valley School District and Township of Scott, Appellants.

Appeal of Chartiers Valley School District and of Township of Scott From Assessment of Property of Connecticut General Life Insurance Company et al. Chartiers Valley School District and Township of Scott, Appellants.

Argued October 6, 1983, before Judges CRAIG, MACPHAIL and DOYLE, sitting as a panel of three.

 

*Robert L. Federline,* with him *Thomas J. Dempsey,* for appellants.

*Leonard M. Mendelson, Hollinshead & Mendelson,* for appellees.

OPINION BY JUDGE CRAIG, December 12, 1983:

These consolidated eighteen appeals, by Chartiers Valley School District and the Township of Scott as taxing bodies, constitute a further chapter in a series of real estate tax assessment appeals involving an apartment development owned by the taxpayer parties. Previously, in *Appeal of Chartiers Valley School District,* 67 Pa. Commonwealth Ct. 121, 447 A.2d 317 (1982) *(Chartiers Valley I),* this court by President Judge CRUMLISH, affirmed the findings of the Court of Common Pleas of Allegheny County as to the market values of the development's various parcels for 1979 and earlier tax years. The Pennsylvania Supreme Court refused to allow the taxing bodies any further appeal in *Chartiers Valley I* but granted the taxpayers permission to proceed with their appeals, which are still pending in that court.

The later tax years of 1980 and 1981 are involved in these consolidated appeals. The taxing bodies have challenged three orders which the trial court entered in October, 1981, while *Chartiers I* was in this court. Summarized, the three orders are as follows:

1. *Negating Automatic Appeals To Common Pleas Court*—An order of October 22, 1981 struck from the issue list the taxing bodies' alleged appeals from decisions of the Allegheny

County Board of Property Assessment, Appeals and Review concerning 1980 and 1981 assessments, which the taxpayers had initially brought to that board. The taxing bodies claim that their appeals automatically came before the common pleas court under §518.1 of The General County Assessment Law, Act of May 22, 1933, P.L. 1853 *as amended,* 72 P.S. §5020-518.1, without the necessity of the taxing bodies actually filing any appeals with the court.

2. *Tax Refunds For 1980 or Credits for 1981*—A second order of October 22, 1981 required the taxing bodies to recognize the 1980 tax reductions for the taxpayers by issuing the refunds, or issuing revised 1981 tax bills giving credit, or accepting payment of the reduced 1981 tax with credit for the 1980 refunds.

3. *Payment of 1981 Taxes in Court*—An order dated October 30, 1981 required that the reduced amount of 1981 taxes, as tendered by the taxpayers, be placed in an interest bearing account by the prothonotary pending acceptance by the taxing bodies, also required that the tax collector mark the taxes as paid for 1981, and further prohibited the taxing bodies from imposing any lien or charging any penalties or interest against the taxpayers for the year 1981.

The taxing bodies question the legal validity of each of those orders.

### Rejection of Automatic Appeal From Board to Court

Under the General County Assessment Law, *as amended,* section 518.1 provides that, so long as a

taxpayer's real estate tax assessment appeal is pending before the board or "before a court on appeal from the determination of the board" the taxpayer's appeal "will also be taken as an appeal" of any assessment subsequent to those already on appeal.

In *Virginia Mansion Apartments, Inc. Appeal,* 52 Pa. Commonwealth Ct. 262, 415 A.2d 963 (1980) we affirmed common pleas court actions which recognized that, when an assessment for 1976-78 had been made earlier than the final common pleas decision on the tax assessment appeal for 1975, the assessment for 1976-78 was deemed to be automatically upon appeal before the board; we approved a trial court order which had transferred it to that tribunal.

In *Marriott Corp. v. Board of Assessment Appeals,* 63 Pa. Commonwealth Ct. 622, 438 A.2d 1032 (1982) we held that, where tax assessment cases for earlier years were still in the common pleas courts of two counties, appeals for subsequent years would be deemed automatically to have been before the respective boards, even though the deadlines for filing appeals with the boards had passed before the effective date of the statutory amendment. This court decided that the statute had retrospective effect; the section states that its automatic appeal effect "shall be applicable to all pending appeals as well as future appeals."

The chronological structure of the present case differs in one important respect from those cases, in each of which the appeals for later years were deemed to be automatically before the board because the earlier years were yet before the trial court. In this case, the common pleas court decision for the years 1969-1979 was made on April 25, 1980, but the board did not issue its revised disposition notices for 1980 and 1981 until February 6, 1981.

Thus we have a new question:

Where the common pleas court decisions on real estate tax assessments for earlier years have been made and are before the appellate courts, will a subsequently-made board revaluation as to later years be treated as if automatically appealed to the common pleas court by a party other than the party who originally appealed to the board?

In *Chartiers Valley I*, this court's opinion noted that, with the board's revaluation for years through 1978 on appeal, the year 1979 was deemed to be included by the statute. However, in that case, involving the same parties as in this case, the taxing bodies, consistent with their approach here, raised no question concerning the automatic inclusion of 1979 in the common pleas court while the earlier years were yet there.

Hence, the precise question in the present case is one which we have not yet answered.

The language of the statute is the starting point. We note first that §520, 72 P.S. §5020-520, gives taxing bodies the same appeal rights as the statute accords to taxpayers. Section 518.1, the crucial section here, provides at its outset that a taxpayer aggrieved by any "assessment or valuation" may appeal from the "decision" of the board charged with the revision of assessments, to the court of common pleas.

The last paragraph of the section, with the exception of the retrospective sentence already quoted, reads:

If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as pro-

vided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court. . . .

The taxing bodies believe that provision to be applicable even when the earlier appeal is pending before an appellate court, and they contend that it generates an automatic appeal to the common pleas court, not just the board.

Reading the section in context, however, we cannot agree. Section 519 expressly and separately deals with appeals from a judgment, order and decree of any "court of common pleas" to the appellate courts. The preceding section, §518.2, in referring to "the court" making determinations as to current market value and common level ratio, is clearly referring to the common pleas court. In the same manner, when §518.1 refers to the period during which an appeal is pending before the board or "before a court on appeal from the determination of the board," the section apparently refers to cases pending before the common pleas court, the tribunal to which appeals from the board are proximately taken.

That reading is particularly clear in view of the history of this case. After the 1980 and 1981 assessments were made, the taxpayers filed their actual appeals of those assessments with the board. With the appeals being thus expressly filed, the automatic appeal provisions were not applicable or needed to launch the appeal process; it had been launched deliberately. When the board reached its determinations as to 1980 and 1981, seemingly adverse to the taxing bodies, the situation was not one for which

the statute appears to be intended—unappealed later years to be brought within the pending review for the sake of efficiency. Here those very years had been appealed in fact; they were already in the appeal process.

We cannot agree with the taxing bodies that, the board and common pleas court having finished with the earlier years, the pendency of those earlier years in the appellate court would provide the basis for an automatic appeal to common pleas court for one side with respect to the same years which the other side had already appealed to the board. We read the statute's automatic inclusion provision as assuming the later assessments to be subject to question on the same basis as the earlier assessments. Here, with the taxpayers having originally attacked both the earlier and later assessments by initiating appeals, there is no logical basis for an assumption that the taxing bodies would necessarily oppose a board reduction decision as to the later years.

Therefore, in reading this not entirely clear statute, we must concur with Judge SCHEIB's order of October 22, 1981, refusing to process 1980 and 1981 for the taxing bodies.

### Orders Implementing Taxpayers' Relief for 1980 and 1981

The second common pleas court order of October 22, 1981 and the order of October 30, 1981 followed the trial court's conclusion that, with no automatic appeal benefiting the taxing bodies with respect to the 1980 and 1981 assessments, no party had preserved an appeal as to those years, and the board's applicable reductions were final. At that point, the taxpayers, having paid the 1980 taxes, sought a refund for that year, and also tried to have the taxing

bodies accept a reduced amount for 1981; the taxing bodies refused on the basis of their contention that automatic appeals had kept the determinations from being final.

The taxpayers therefore pursued their desired relief by filing petitions with the common pleas court as to 1980 and 1981, despite the fact, as the common pleas court decided and we have agreed, no aspect of those years had come into the jurisdiction of the common pleas court. Thus, the taxpayers' petitions as to 1980 and 1981, unconnected with the proceedings for earlier years and unrelated to any common law form of action, would be insufficient as a basis for the court taking jurisdiction of such a new action unless a statutory basis for it could be identified.

The common pleas court opinion cites no authority for these latter two orders. They appear to follow the now-repealed section 518 of the General County Assessment Law, which had expressly allowed an "appellant" to pay a questioned tax amount into "the court to which such appeal is taken;" the court was authorized to order the undisputed portion of tax paid to the taxing authorities and the remainder to be held by the court pending final disposition. Of course, even if that section were still in effect, it would not be sufficient to confer jurisdiction upon the common pleas court "to which such appeal is taken" because as the taxpayers themselves have strongly and thus far successfully contended, no appeal of 1980 and 1981 was ever taken to the court.

The taxing bodies, consistently with their contention that judicial rejection of their claimed attack on the 1980 and 1981 reductions is not final, prefer to follow the proviso which section 518.1 substituted for the repealed section 518. That proviso only permits the taxpayer to pay the tax, as originally assessed, to

the tax collector under written protest, and requires the taxing bodies to segregate 25% in a separate account, not to be used by the governmental bodies except with court permission.

The proviso would not be applicable to the 1980 taxes here unless the taxpayers paid them under protest. On the other hand, it could have provided the course of action to be followed for the 1981 taxes until the 1980 and 1981 determinations are final beyond any contention otherwise.

However, at the time of argument of this appeal, counsel brought to this court's attention (and have confirmed by stipulation) an agreement which has affected one aspect of the common pleas court order of October 30, 1981. Under that agreement made in February of 1983, with the trial court's consent, the taxpayers withdrew the amounts which they had paid to the prothonotary, along with accrued interest thereon, and paid to the taxing bodies' collector, the principal sums relating to 1980-81-82, without prejudice to the respective claims concerning liability for interest and penalties.

Lest we misread that agreement (which commendably permitted the tax payments to be put to use), we do not treat it as mooting any of the issues entirely. We merely take note of the agreement as it may facilitate the final resolution of these cases.

### ORDER

Now, December 12, 1983, the order of the Court of Common Pleas of Allegheny County dated October 22, 1981 striking issue numbers is affirmed, and the orders dated October 22 and October 30, 1981, relating to 1980 tax refunds and 1981 tax payments, are reversed.

ORDER

Now, December 12, 1983, the orders of the Court of Common Pleas of Allegheny County, dated October 22 and October 30, 1981, relating to 1980 tax refunds and 1981 tax payments, are reversed.