622 A.2d 420

**CHARTIERS VALLEY SCHOOL DISTRICT
and Township of Scott**

v.

**BOARD OF PROPERTY ASSESSMENT, APPEALS AND REVIEW and Virginia Mansions Apartments, Inc.**

**Appeal of VIRGINIA MANSIONS APARTMENTS, INC., the Property Owner and The Sunland Properties Trust and Elias J. Hakim, Jr., successors in interest to the subject real estate, Appellants.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 21, 1992.

Reconsideration Granted Feb. 5, 1993.

Decided March 9, 1993.

82

John M. Silvestri, for appellants.

Thomas J. Dempsey and Robert L. Federline, for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

CRAIG, President Judge.

Virginia Mansions Apartments, Inc. (VMA) appeals from a January 21, 1991 order of the Allegheny County Court of Common Pleas which, upon reconsideration, had confirmed an

earlier consent order which set the fair market value of certain real estate [1] at $5,540,000 for the tax year 1980 and $5,570,000 for 1981. VMA argues that the trial court was without jurisdiction to enter the order. We find a jurisdictional defect different from those urged by VMA and vacate the consent order and the order confirming it.

This case has been before this court four times.[2] Additionally, the Pennsylvania Superior Court decided a closely related matter. The complicated historical background of this appeal is summarized as follows.[3]

### The 1972–74 Triennial Assessment

In September, 1972, VMA appealed to the Allegheny County Court of Common Pleas from the assessment of the real estate made by the Board of Property Assessment, Appeals and Review (board) for the triennial years 1972–1974. The Township of Scott (Scott Township) and Chartiers Valley School District (CV Schools) also appealed that '72–'74 assessment. By stipulation, all parties settled the appeals and the fair market value of the property was set by order of the court at $1,500,000 for the year 1975. No party appealed from that order.

### The 1975 Assessment

In May, 1975, the board revised the 1975 assessment downward to $1,000,000. From that action, Scott Township and CV Schools filed an appeal docketed in the Allegheny County Court of Common Pleas at G.D. 75–17450. After a hearing, the court of common pleas, on July 19, 1976, reinstated the $1,500,000 value for 1975 based upon the stipulation made in the previous appeal of the '72–'74 triennial assessment. VMA appealed that decision and this court affirmed, holding that counsel for VMA had authority to enter into the stipulation.

1. The real estate is a complex known as the Virginia Mansions Apartments, now converted to condominiums.

2. The court issued this opinion pursuant to an order dated February 5, 1993, granting reconsideration.

3. The previous appellate decisions dealing with this dispute are substantial sources for much of the history of this case.

*Scott Township Tax Assessment Case,* 31 Pa.Commonwealth Ct. 505, 377 A.2d 826 (1977).

*The 1976–78 Triennial Assessment and the 1979 Assessment*

As noted above, the trial court heard the appeal of the board's 1975 reduction of the 1975 assessed value in 1976. Allegheny County President Judge Michael J. O'Malley, in that case, also took jurisdiction over the '76–'78 triennial assessment by virtue of the automatic appeal provisions of the Act of June 21, 1939, P.L. 626, § 11, *as amended,* 72 P.S. § 5452.11, made applicable to appeals by taxing authorities by the Act of May 22, 1933, P.L. 853, § 520, *as amended,* 72 P.S. § 5020–520.[4] But, after ruling on the 1975 assessment by his July 19, 1976 order, Judge O'Malley *remanded* to the board all issues related to the '76–'78 triennial assessment.

Scott Township and CV Schools appeared at the board hearings on the '76–'78 assessment but presented no evidence as to the fair market value of the real estate. The board dismissed the appeal, and the two taxing authorities appealed that dismissal to the court of common pleas under the same docket number as Judge O'Malley's remand order (G.D. 75–17450).

The '76–'78 matter thus came before Court of Common Pleas Judge Joseph Del Sole[5] who denied VMA's motion to quash. VMA appealed to this court and we affirmed, holding that the court of common pleas had jurisdiction of the appeal and that the taxing authorities had not abandoned the litigation. *Virginia Mansions Apartments, Inc. Appeal,* 52 Pa.Commonwealth Ct. 262, 415 A.2d 963 (1980), *appeal dismissed as improvidently granted,* 494 Pa. 315, 431 A.2d 277

---

4. 72 P.S. § 5020–520 gives a taxing authority the same rights on appeal from an assessment that a taxpayer enjoys. 72 P.S. § 5452.11 provides in pertinent part as follows:

[S]o long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any triennial or intertriennial assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.

5. Judge Del Sole is now a member of the Pennsylvania Superior Court.

(1981) (*Virginia Mansions Apartments Appeal*). All tax assessment appeal proceedings since the appeal by Scott Township and CV Schools of the board's reduction of the 1975 assessment are at docket number G.D. 75–17450 in the Allegheny County Court of Common Pleas.

VMA conveyed the subject real estate to the Sunland Properties Trusts (SPT) on December 1, 1979 for $1.00. SPT converted the complex from apartments to condominiums. Scott Township and CV Schools sought to have the conveyance from VMA to SPT set aside as designed to place VMA assets fraudulently beyond the reach of its creditors. VMA filed preliminary objections alleging that the taxing authorities had an adequate remedy at law by the filing of municipal claims.[6] The trial court sustained the preliminary objections and the Superior Court affirmed. *Chartiers Valley School District v. Virginia Mansions Apartments, Inc.*, 340 Pa.Superior Ct. 285, 489 A.2d 1381 (1985). The two taxing authorities then filed municipal claims against the real estate to preserve tax liens, claims docketed in the Allegheny County Court of Common Pleas at G.D. 82–24580 and G.D. 82–24581.

Meanwhile, work on the procedural maze which was G.D. 75–17450 continued. Senior Judge Weir conducted a hearing on the appeal of the real estate tax assessments on December 13, 1983. At that hearing, the following dialogue occurred:

THE COURT: This is an appeal involving the assessments—I'm asking rather than stating. This is an appeal involving the assessments for 1976, 1977 and 1978.

MR. DEMPSEY [Counsel for Scott Township and CV Schools]: Plus 1979. The triennial 1976 plus the year 1979. There are other years involved, but long ago Judge Del Sole decided and no party has contested that there would—the years 1980 and later would be reserved. There was a change to a condominium in December of 1979.

THE COURT: Regardless of what may be said here, this matter before me now is the same appeal, the same docket

6. Act of May 16, 1923, P.L. 207, § 1, *as amended*, 53 P.S. §§ 7101–7112.

numbers, the same name everything, as the case before Judge Del Sole, isn't it?

MR. OLDS (Counsel for VMA): Except the issue involved before Del Sole—

THE COURT: Yes, but he decided that this appeal is properly before this court.

(Transcript, 12/13/83, pp. 13–14).[7] Judge Weir then considered the fair market value of the real estate for years '76–'79 and entered an order setting that value at $3,000,000. On appeal of that order to this court, we affirmed. *Chartiers Valley School District v. Board of Property Assessment, Appeals and Review,* 94 Pa.Commonwealth Ct. 4, 503 A.2d 66 (1985) (*Chartiers Valley*). Importantly, our order affirming the fair market value at $3,000,000 did *not* remand to the court of common pleas. Further, unlike the procedural posture of the case when it came before this court in *Virginia Mansions Apartments Appeal,* there is no indication that Judge Weir had remanded the assessments for the years 1980 and later to the board for consideration.

### The 1980–81 Assessments

As noted above, SPT had converted the real estate from apartments to condominiums. The various purchasers of those condominiums had the Virginia Mansions Condominium Association, Inc. (Association) to protect their interests. Concerned that the two municipal tax claims filed by Scott Township and CV Schools cast clouds on its members' titles to their various condominium units, the Association filed a class action

---

7. Our review of Judge Del Sole's opinion and order of September 14, 1979, which we adopted in *Virginia Mansions Apartments Appeal,* reveals no indication that the assessments for tax years 1980 and later were "reserved". Nor does Judge Weir's opinion and order of February 21, 1984, mention this reservation of subsequent assessments for later trial. The only reference we can glean from the record to the reservation of issues referred to in the quoted dialogue is a discovery order, signed by Judge Del Sole and dated May 12, 1982, compelling VMA to produce documents relevant to the period 1975 through January 1, 1980. That order makes no express reservation of the assessments for tax years '80–'81 for later trial. Indeed, the time limitation of production of documents appears to be consistent with the fact that VMA conveyed the property in December, 1979.

in the Allegheny County Court of Common Pleas. In that suit, docketed at G.D. 87–21412, the Association alleged that various defendants were responsible for those tax claims.

The trial court settled that class action by entering a default judgment against one of the defendants, Title Insurance Corporation of Pennsylvania (TICP), resulting in an agreement that TICP would pay into court an amount sufficient to satisfy the municipal tax claims. The order of October 26, 1989, settling the class action and the municipal tax claims, also contained the following provision which triggered the chain of events leading to this appeal:

> 4. Upon payment of said security into Court, the Virginia Mansions Condominium Association, Inc. and those taxpayers with standing to pursue the pending tax assessment appeal litigation for the tax years 1980 and 1981 for property (the real estate at issue here) ... shall assign their claims to the Title Insurance Corporation of Pennsylvania.

Scott Township and CV Schools, proceeding under this paragraph 4 of the October 26, 1989 order (docketed at G.D. 87–21412, G.D. 82–25480 and G.D. 82–25481) entered into a consent decree with TICP setting the fair market value of the real estate at $5,540,000 for 1980 and $5,570,000 for 1981, without giving any notice to VMA or SPT of the hearing on the consent decree. Judge Stanton Wettick entered an order dated November 30, 1990 (at the earlier docket number, G.D. 75–17450), setting the fair market value of the real estate for tax years '80–'81 in accord with the consent decree.

VMA and SPT presented a motion for reconsideration to Judge Wettick on the basis that SPT was the true owner of the real estate in tax years 1980 and 1981 and further alleging that TICP could not bind them by the consent decree and that the court was without jurisdiction to enter an order following a hearing concerning which they had no notice. Judge Wettick granted reconsideration on December 28, 1990, and assigned the case to Judge Robert P. Horgos, who had presided over settlement of the class action at G.D. 87–21412. Judge Horgos determined that the October 26, 1989 order, which settled the class action and municipal claims cases, had assigned all of

VMA's and SPT's rights in the tax assessment appeal docketed at G.D. 75–17450 to TICP. Therefore, he determined that VMA and SPT had no standing to contest the validity of the consent decree. Accordingly, Judge Horgos entered an order of January 21, 1991, denying the request to vacate Judge Wettick's November 30, 1990 order, and this appeal followed.

### The 1980–81 Tax Assessments on Appeal Here

On appeal, VMA advances three arguments challenging the jurisdiction of the court of common pleas over tax years 1980 and 1981. First, VMA argues that SPT, the true owner of the real estate for the years '80–'81 was not a party to the appeal docketed at G.D. 75–17450 and was an indispensable party without whom the trial court could not proceed. Second, VMA argues that the conveyance of the property to SPT in 1979 terminated the appeal at G.D. 75–17450 for any year after 1979. Finally, VMA argues that because it had no notice concerning the hearing where the consent decree was entered, the trial court should have refused to exercise jurisdiction. Scott Township and CV Schools argue that VMA and the other appellants no longer have standing in this case because they assigned all claims in the tax appeal docketed at G.D. 75–17450 to TICP by the order which settled the class action and twin municipal claims.

### The Issue Presented

The pivotal issue here is whether the court of common pleas retained any subject matter jurisdiction of the real estate tax assessment appeal docketed at G.D. 75–17450 following the appeal of the 1976–79 years taken to this court in *Chartiers Valley.*

■ Subject matter jurisdiction cannot be waived and this court may raise it sua sponte. *Calabrese v. Collier Township Municipal Authority,* 430 Pa. 289, 240 A.2d 544 (1968). We have applied this rule when a trial court attempted to enter an order in a case which had been finally determined by a previous order. *See Municipal Council, Municipality of Monroeville v. Kluko,* 102 Pa.Commonwealth Ct. 49, 53, 517 A.2d 223, 225 (1986) (trial court failed to act, as required by 42

Pa.C.S. § 5505, within 30 days of entry of order disposing of case; thus the order had become final and finality was a jurisdictional defect which parties could not waive).[8]

## The Automatic Appeal Provisions

When construing language similar to that found in 72 P.S. § 5452.11, we have stated that the palpable intent of the automatic appeal provisions is twofold—the elimination of duplicative appeals and the consolidation of subsequent tax assessments with those originally appealed for trial purposes. *Wilson Townhouses v. Berks County Board of Assessment Appeals*, 112 Pa.Commonwealth Ct. 498, 535 A.2d 1226, *petition for allowance of appeal denied*, 519 Pa. 670, 548 A.2d 259 (1988).[9]

## Conflicting Interpretations of the Automatic Appeals Law

There is conflicting authority as to whether a real estate assessment appeal is still pending within the meaning of the automatic appeal provisions when the case is before an *appellate* court. When construing the automatic appeal provision language which appears in the Act of May 22, 1933, P.L. 853, § 518.1, *as amended*, 72 P.S. § 5020–518.1,[10] this court held that the term "court," as used in the phrase "pending before the board or before a court on appeal from the determination of the board," was confined to the courts of common pleas and did not include appellate courts. *Appeal of Chartiers Valley*

---

8. Because we raise the jurisdictional question sua sponte, the standing arguments of the taxing authorities need not be addressed.

9. *Wilson Townhouses* construed the Act of June 26, 1931, P.L. 1379, § 9, *as amended*, 72 P.S. § 5350(c) which reads as follows:

> [S]o long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court.

The only difference between this language and that which appears in 72 P.S. § 5452.11 is the lack of any reference to a triennial or intertriennial assessment in § 5350(c). That difference has no impact on this case.

10. The language in § 518.1, 72 P.S. § 5020–518.1, is identical to that in § 9, 72 P.S. § 5350(c), quoted in the preceding footnote.

*School District,* 79 Pa.Commonwealth Ct. 69, 469 A.2d 324 (1983) (*Appeal of Chartiers Valley* ).[11]

However, a contrary analysis appeared in *City of Wilkes–Barre Industrial Development Auth. v. Board of Tax Assessment Appeals, County of Luzerne,* 100 Pa.Commonwealth Ct. 486, 514 A.2d 1012 (1986), *Wilkes–Barre II* ). There we stated that these real estate appeals continue to be pending before a court until a final determination has been made by an appellate court.[12]

*Wilkes–Barre II* involved an appeal of a 1982 assessment; the court of common pleas decision was appealed to this court, and we remanded for reconsideration. *City of Wilkes–Barre Industrial Development Auth. v. Board of Tax Assessment Appeals, County of Luzerne,* 89 Pa.Commonwealth Ct. 182, 492 A.2d 113 (1985) (*Wilkes–Barre I* ). After the 1985 remand of the 1982 assessments, the court of common pleas also exercised jurisdiction over the assessments for tax years 1983 and 1984.

Thus the precise question presented in *Wilkes–Barre II* was whether assessments after the original trial court decision are included by the automatic appeal provision language *when the case has been remanded to the court of common pleas following a decision by an appellate court.* As far as *Wilkes–Barre II* is concerned, any consideration of whether a real estate assessment appeal remains pending within the meaning of the language in the automatic appeal provisions while it is solely before the appellate court is dictum. Based on our analysis below, the remand to the court of common pleas is a crucial distinction between the procedural history presented in *Wilkes–Barre II* and that presented here because such a

11. That case involved the assessed value of the Chatham Park Apartments. *Appeal of Chartiers Valley School District,* 67 Pa.Commonwealth Ct. 121, 124 n. 2, 447 A.2d 317, 319 n. 2 (1982), *appeal dismissed as improvidently granted,* 500 Pa. 341, 456 A.2d 986 (1983). Scott Township and CV Schools had appealed the assessments of that property as well as the assessment for the Virginia Mansions Apartments at issue here.

12. *Wilkes–Barre II,* like *Wilson Townhouses,* construed 72 P.S. § 5350(c).

remand brings the matter again within the jurisdiction of the court of common pleas.

However, in *Meadowbrook Properties Appeal*, 89 Pa.Commonwealth Ct. 341, 492 A.2d 766 (1985),[13] there is authority directly contrary to the 1983 *Appeal of Chartiers Valley*. There we held that, because a real estate assessment appeal was not finally decided until our Supreme Court denied permission to appeal, the tax assessments for later years were included in the appeal by the automatic appeal provision, and could be increased to match the fair market value set by the original decision of the court of common pleas. *Meadowbrook Properties Appeal* contains no reference to, or discussion of, our previous decision in *Appeal of Chartiers Valley*. *Meadowbrook Properties Appeal* is also factually distinguishable because there the taxing authority did not try to increase the fair market value from that set by the original trial court decision; rather, the trial court's decision was applied to later years. Here Scott Township and CV Schools seek to use the same appeal to *increase* the assessed value for the later tax years.

### Reconciling the Conflict

■ Today we reconcile this conflict in authority by holding that the analytical model of *Appeal of Chartiers Valley* better implements the intent of the automatic appeal provision language as it appears throughout Title 72. As stated above, the automatic appeal provisions are intended to prevent duplicative appeals and consolidate these matters for trial.

■ An additional principle is involved. On appeal from the board, the court of common pleas conducts a hearing *de novo*. *Westinghouse v. Board of Property Assessment*, 138 Pa.Commonwealth Ct. 30, 587 A.2d 820, *petition for allowance of appeal granted*, 528 Pa. 182, 595 A.2d 1145 (1991).[14] Thus, so long as the real estate tax assessment appeal is pending before the board or a court of common pleas, the case lies in a

13. Like *Wilkes–Barre II* and *Wilson Townhouses, Meadowbrook Properties Appeal* construed 72 P.S. § 5350(c).

14. Citing the Act of May 22, 1933, P.L. 853, § 518.2, added by the Act of Dec. 13, 1982, P.L. 1160, *as amended*, 72 P.S. § 5020–518.2.

forum where the parties can present evidence on any change in value which is relevant to the subsequent tax assessments that automatically become part of the appeal. This fact serves a key purpose of the statute; one trial determines the issues being contested for tax assessments so long as the parties remain able to present relevant evidence.

██ Once before the appellate courts, however, the parties' ability to litigate the issues is severely limited. The appellate court examines the court of common pleas decision to determine whether there has been an abuse of discretion, an error of law has occurred, or whether substantial evidence supports that decision. *Reichard–Coulston, Inc. v. Revenue Appeals Board of Northampton County,* 102 Pa.Commonwealth Ct. 227, 517 A.2d 1372 (1986). No party can present evidence at this stage of the proceedings. Thus, to include tax assessments arising while a case is before the appellate courts would result in a determination of the assessed value of the real estate for those later years without any evidence relevant to the value of the real estate in that time period. That result would not serve the purpose of the automatic appeals provision which was meant to consolidate appeals, not deprive the parties of an opportunity to be heard.

██ Moreover, the interpretation here adopted is one which better follows the precise language of the automatic appeal provisions. The crucial phrase is "pending before the board or *before a court on appeal from the determination of the board*". 72 P.S. §§ 5020–518.1, 5452.11, 5350(c) (emphasis added). Because the court of common pleas conducts a *de novo* hearing on the issues, when a real estate assessment case is appealed to this court, we do not review the board's determination; we review the determination of the court of common pleas. Thus, when such a case is before us, it is no longer "on appeal from the determination of the board". By their plain language the automatic appeal provisions do not apply to cases on appeal from the courts of common pleas. This analysis was alluded to in *Appeal of Chartiers Valley.* The automatic appeal provision language which "refers to the period during which an appeal is pending before the board or 'before a court on appeal from the determination of the board,'

... refers to cases pending before the common pleas court, the tribunal to which appeals from the board are proximately taken." *Appeal of Chartiers Valley,* 79 Pa.Commonwealth Ct. at 75, 469 A.2d at 326.

### Application to This Case

As noted above, when the trial court determined the fair market value for 1975, that court remanded the triennial assessment for tax years '76–'78 to the board. Following remand, those years again came before the court of common pleas and were then appealed to this court. In affirming the trial court's decision that it had jurisdiction of the '76–'78 triennial, we adopted the opinion of Judge Del Sole. *Virginia Mansions Apartments Appeal,* 52 Pa.Commonwealth Ct. at 265, 415 A.2d at 965. The adopted opinion addresses the jurisdictional question with the following language:

> [T]he filing of the initial appeal to this Court from the 1975 tax assessment acted as a continuing appeal of all subsequent assessments, including, of course, the assessment for the 1976–77–78 triennial now at issue during the pendency of that appeal (see, 72 P.S. § 5452.11, supra), thereby giving this Court jurisdiction to entertain the present appeals. Moreover, the April 5, 1978, Order of Judge O'Malley unequivocally and unconditionally preserves the rights of '[a]ll parties to file any [timely] appeal to the Board's determination.' Since Judge O'Malley's order is a final Order, that determination is res judicata. That jurisdiction which vested in the Court of Common Pleas upon the filing of the first appeal has never been terminated by any voluntary discontinuance or by any action of Court. It is abundantly clear from the text of Judge O'Malley's order that it was never his intention in remanding the present action to relinquish ultimate jurisdiction of the case. It is equally significant to note that Judge O'Malley was under absolutely no statutory compulsion to remand the action to the Board. In the alternative, Judge O'Malley could simply have proceeded to hear the case de novo on the issue of the 1976–77–78 triennial assessment without remand. Since the April 4, 1978, Order is without benefit of an accompanying

Opinion we can, at best, only speculate as to Judge O'Malley's purpose in ordering the remand to the Board. Nevertheless, it seems absurd to suggest that the Board had authority to terminate an appeal for all purposes upon remand from a Court which had expressly preserved its jurisdiction to hear an appeal from the Board's determination.

(Slip opinion, G.D. 75–17450, September 14, 1979, pp. 4–5). We continue to agree that the remand to the board, while the separate issue of the 1975 assessment was appealed to this court, preserved the jurisdiction of the Allegheny County Court of Common Pleas. Because the issue of the '76–'78 triennial assessment was pending before the board, a forum where the parties can present evidence, any later tax years were also incorporated at the same docket number.

### Trial Court Remands to Board

■ We expressly disapprove, however, the procedural mechanism employed to preserve jurisdiction.[15] The purpose of the automatic appeal provisions is trial consolidation. To split off the assessments for subsequent years by remanding to the board violates that purpose by creating separate trials. We hold today that when a real estate appeal is before the court of common pleas, the court cannot remand to the board. To satisfy the trial consolidation intent of the automatic appeal provisions, the court must determine all the issues relevant to all the assessment years before it at one trial.

To follow the course charted by the court of common pleas in this case could result in a never-ending cycle of appeal.

---

**15.** The opinion in *Appeal of Chartiers Valley*, 79 Pa.Commonwealth Ct. 69, 469 A.2d 324 (1983), states that we approved the remand to the board which occurred here by adopting Judge Del Sole's opinion. The precise questions presented to Judge Del Sole, and on appeal to this court, were the existence of jurisdiction and possible abandonment of the case by the taxing authorities (discussed *infra*). The question of whether the remand to the board served the purposes of the automatic appeal provisions was not presented. Moreover, the language of the opinion quoted above indicates that the reasons for the remand are unclear and that it was not required by statute. Thus, *Appeal of Chartiers Valley* misreads the impact of our adoption of the trial court opinion in *Virginia Mansions Apartments Appeal.*

The original appeal challenged the assessment for tax year 1975. By the time the case came before the court of common pleas, the triennial assessment for tax years '76–'78 was incorporated. The trial court determined the 1975 assessment issue and remanded the '76–'78 triennial. By the time that triennial assessment was again before the court of common pleas in 1983, assessments for subsequent years '79–'82 were incorporated.

The assessments for years '76–'79 were decided, but the parties attempted to reserve assessments for years '80 and later for future consideration. However, as noted in footnote 6 of this opinion, neither Judge Del Sole nor Judge Weir specifically ordered that the assessments for tax years 1980 and later were reserved in any way. Scott Township and CV Schools point to no statutory authority [16] which allows such a "reservation" of the trial of issues properly before the court for a later date and we have found none. Reservation of incorporated subsequent tax assessments for later trial further violates the trial consolidation purpose of the statute by creating the need for yet another evidentiary proceeding.

Moreover, with the appeal continuing at docket number G.D. 75–17450, when Scott Township and CV Schools again appeared before the court of common pleas to enter the consent decree in 1990, the assessments for tax years '83–'89 would have been incorporated into the appeal at that docket number.[17]

Because no evidence was entered on tax years '82–'89, those years arguably could be still pending and subsequent assessments would continue to be incorporated. Thus reincarnations of the original appeal would continue to arise from the

16. In these statutory appeals, "the parties and the trial court must proceed in strict accordance with the governing legislation." *Municipality of Monroeville Appeal,* 124 Pa.Commonwealth Ct. 463, 466, 556 A.2d 924, 926 (1989) (citation omitted).

17. Scott Township and CV Schools have maintained throughout all these related cases that the appeal at G.D. 75–17450 continued. So long as that appeal of the board's determination was before the court of common pleas, all subsequent assessments would be incorporated without any action by the parties by virtue of the applicable automatic appeal provision.

ashes of any decision entered at the same docket number to confront the courts indefinitely. The statute was intended to prevent duplicative appeals, not to create an appeal that never ends.

### Conclusions

We, therefore, adopt the following construction of the language "so long as the appeal is pending before the board or before a court on appeal from the determination of the board." 72 P.S. § 5452.11.

1. So long as the real estate appeal is pending before the board or the court of common pleas, all subsequent tax assessments are incorporated. Once the case has come before the court of common pleas, that court must hear evidence and decide all properly presented issues relevant to all the tax assessments incorporated into the appeal.

2. When subsequent assessments have thus been incorporated into the proceedings before the common pleas court, that court has no authority to remand them for initial consideration by the board because such fragmentation would violate the trial consolidation intent of the statute. *Wilson Townhouses.*

3. For the same reason, the trial court cannot sever proceedings before it by deferring any incorporated subsequent assessment for later trial.[18]

4. If the court of common pleas decision is appealed to this court, jurisdiction of the court of common pleas is ended. Pa.R.A.P. 1701(a). No tax assessments arising while the case is before the appellate courts are incorporated because they

---

**18.** The requirement that the trial court decide the issues relevant to all assessments included by the automatic appeal provisions was announced by this court in *Strawbridge & Clothier, Inc. v. Board of Assessment Appeal of Delaware County*, 89 Pa.Commonwealth Ct. 198, 492 A.2d 108 (1985). The requirement was subsequently added to the statutory provisions governing real estate assessment appeals. Act of December 17, 1986, P.L. 1680, No. 194, § 3, *as amended,* 72 P.S. 5020.518.2. Act of July 19, 1991, P.L. 91, No. 21, § 5, *as amended,* 72 P.S. § 5350(a). The Allegheny County Court of Common Pleas did not have the benefit of the *Strawbridge* decision when it decided in 1983 to reserve the included assessments for later trial. Nor were the statutory amendments applicable at that time.

cannot be consolidated for trial with the tax assessments already decided by the court of common pleas. *Appeal of Chartiers Valley.*

However, in the event of an appeal, if the trial court does reserve any issue(s), as it did when Judge O'Malley remanded the 1976–78 triennial assessment to the board, then the trial court can retain jurisdiction pursuant to Pa.R.A.P. 1701(c). If the trial court does not specifically reserve an issue for trial court jurisdiction, as was the case for tax years 1980–81 when neither Judge Del Sole nor Judge Weir entered any type of order reserving those years, the general bar of Pa.R.A.P. 1701(a) applies to the trial court. As noted above, however, a trial court may not defer later tax year assessments for subsequent disposition, nor may it remand such assessments to the administrative authorities.

5. However, if the appellate court remands such a case to the court of common pleas for further evidentiary proceedings, it is again before a court on appeal from the determination of the board. Accordingly, intervening tax assessments are incorporated, and the trial court must consolidate those newly incorporated assessments with the remanded issues. *Wilkes–Barre II.*

6. If the appellate court decision does not remand the case to the court of common pleas, when the appellate court order disposing of the case becomes final, all jurisdiction at that docket number ceases. *Meadowbrook Properties Appeal* is overruled to the extent it holds to the contrary.[19]

■ We now apply these conclusions to the facts of the case at hand. When the case at docket number G.D. 75–17450

19. Although we overrule *Meadowbrook Properties Appeal* today, its result is arguably correct. Under the General County Assessment Law, the board reviews all property assessments prior to the first of July each year and increases or decreases those assessments as it deems proper. Act of June 26, 1931, P.L. 1379, § 7, *as amended*, 72 P.S. § 5348. When the trial court's decision increasing the fair market value of the real estate for tax year 1975 was affirmed on appeal, it increased the base figure which was to be reviewed by the board for years 1976 and 1977. Because the board found no need to increase or decrease the assessment for those years, the 1975 value, as set by the trial court and affirmed by this court, arguably was the true assessment for tax

came before Judge O'Malley in late 1975, the '76–'78 triennial assessment had been made. That triennial assessment was incorporated because the case was still pending before the court of common pleas. Judge O'Malley's order setting the fair market value for 1975 and remanding the '76–'78 triennial bifurcated the trial of the issues in the case. Thus, the triennial assessment was within the jurisdiction of the board, and the 1975 issue was within the jurisdiction of this court when Judge O'Malley's order was appealed.[20] Although the remand was procedurally improper because it violated the trial consolidation purpose of the automatic appeal provisions, it did preserve jurisdiction of the appeal before a tribunal where the parties had the opportunity to offer evidence. This procedural impropriety does not rise to the level of a jurisdictional defect.

As noted by the opinion we adopted in *Virginia Mansions Apartments Appeal,* "ultimate jurisdiction" of an appeal from the board's determination in the matter lay in the court of common pleas. When the case came before Judge Weir in 1983, the assessments for tax years '76–'82 were incorporated. Evidence of the value of the property for tax years '76–'79 was presented. No party presented evidence relevant to any change in value for any assessment later than 1979. Nor did Judge Weir remand any of those later assessment issues to the board; no bifurcation of issues occurred. By not presenting evidence, all parties have waived any argument that the fair market value of the property changed in tax years '80 and '81.[21]

When the order setting the assessment for tax years '76–'79 was appealed to this court, the Allegheny County Court of

years '76–'77. Whether this analysis is correct, or whether this retroactive increase could have been the subject of a new appeal, must be left to another day.

20. The remand portion of that order was interlocutory and unappealable.

21. We must distinguish the effect of failure to present evidence at the court of common pleas level from the effect of a failure to present evidence before the board. In the opinion we adopted in *Virginia Mansions Apartments Appeal,* Judge Del Sole held that the failure to present evidence in front of the board was not abandonment of the

Common Pleas lost all jurisdiction at docket number G.D. 75–17450; nor could it regain jurisdiction at that docket number by virtue of further appeal from the board's decision because there was no remand to the board of any later years. This court's decision and order in *Chartiers Valley* finally disposed of the case at that docket number. Thus the taxing authorities could not re-open the case at G.D. 75–17450 to enter the consent decree in 1990. All who were parties to the case at that docket number—VMA, Scott Township and CV Schools—are bound; the fair market value set for tax year 1979 is the value for tax years 1980–'81.

### Res Judicata Effect of Municipal Claims and Class Actions

■ One final issue must be addressed. At argument, the taxing authorities contended that the question of whether there was a continuing appeal (at G.D. 75–17450) had been decided against VMA and SPT in the class action and municipal claims actions. Scott Township and CV Schools thus conclude that it is res judicata that the assessment appeal continued at that docket number. We disagree. Generally, where a court decides that it has subject matter jurisdiction of a case, and that decision is not appealed, the jurisdictional decision becomes res judicata. *Connellsville Township Supervisors v. Connellsville*, 14 Pa.Commonwealth Ct. 532, 322 A.2d 741 (1974). However, that analysis does not apply to "jurisdictional determinations which are void on their face, i.e. where the want of jurisdiction is patent." *Id.*, 14 Pa.Commonwealth Ct. at 537 n. 4, 322 A.2d at 743 n. 4. Here the record clearly revealed that the case at docket number G.D. 75–17450

issues because the taxing authorities had the opportunity to present evidence at the *de novo* hearing before the court of common pleas. "[T]he right to trial de novo includes the right 'to proceed to trial with no evidentiary limitations ... other than those which would be applicable to an original trial.' " (Slip opinion, G.D. 75–17450, September 14, 1979, p. 7, quoting *Weber v. Lynch*, 473 Pa. 599, 610, 375 A.2d 1278, 1281 (1977)). Once at the court of common pleas level, however, a party has no right to present evidence at the next step of the process. As all parties failed to present evidence relevant to tax years '80–'82 at the last forum where that opportunity was available to them, they have waived any claim that the assessments for those years should have been different from that determined for tax year 1979.

had been appealed to this court, thereby removing all jurisdiction from the court of common pleas. Because there was no remand in *Chartiers Valley* from this court, the court of common pleas' lack of jurisdiction at the docket number in question was patent. Thus, res judicata does not affect our analysis of the subject matter jurisdiction defect here presented.

Accordingly, the orders of the court of common pleas on appeal here—the consent order and the order confirming it—are vacated.

## ORDER

Now, March 9, 1993, pursuant to reconsideration, it is ORDERED as follows:

1. The foregoing opinion, modified by changes on slip opinion pp. 19 and 22, and by the addition of a second paragraph under item four on slip opinion p. 22, is hereby filed as the opinion of the court; and

2. The order in this case, filed December 3, 1992, is hereby re-entered as follows:

The orders of the Allegheny County Court of Common Pleas entered at G.D. 75–17450, dated November 30, 1990 and January 21, 1991, are vacated.