# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marchwood Associates GP, LLC, t/a | : | |
| Marchwood Associates, L.P., | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 972 C.D. 2018 |
| | : | ARGUED: April 9, 2019 |
| Downingtown Area School District and | : | |
| Chester County Board of Assessment | : | |
| Appeals and Chester County | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge[1]
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                     **FILED: September 18, 2019**

Marchwood Associates GP, LLC, t/a Marchwood Associates, L.P., (Taxpayer) appeals from an order of the Court of Common Pleas of Chester County (trial court) sustaining the preliminary objections of Downingtown Area School District (School District), Chester County Board of Assessment Appeals (Board), and Chester County (County) (collectively, Appellees) and dismissing Taxpayer's complaint with prejudice and without leave to replead.[2]  We affirm, in part on different grounds.[3]

---

[1] This matter was assigned to this panel before September 1, 2019, when Judge Simpson assumed the status of senior judge.

[2] The School District joins in the brief filed by the Board and the County and, in turn, they join in the School District's brief.

[3] *Boro Constr., Inc. v. Ridley Sch. Dist.*, 992 A.2d 208 n.9 (Pa. Cmwlth. 2010) (appellate court may affirm decision of lower court if the result is correct on any ground without regard to the one the lower court itself relied upon).

Pursuant to our prior opinion involving Taxpayer, *Downingtown Area School District v. Chester County Board of Assessment Appeals*, (Pa. Cmwlth., Nos. 1461 and 1462 C.D. 2016, filed July 7, 2017), *appeal denied*, (Pa., Nos. 666 and 667 MAL 2017, filed February 6, 2018) (*Marchwood I*), the pertinent background is as follows. Taxpayer owns two adjacent parcels in Uwchlan Township, Chester County, totaling 43.6 acres. Located at 608 Cadwalader and 128 Surrey Way, the parcels are improved with a 504-unit apartment complex. *Id.*, slip op. at 1-2. "In June 2012, the School District retained a property tax consulting service firm . . . to review the market values and assessments of properties in the School District." *Id.*, slip op. at 2. Subsequently, the firm identified twenty-three non-residential properties that potentially were under-assessed. *Id.* In July 2012, the School District filed twenty-three assessment appeals, which included Taxpayer's properties. In accordance with a 1996-97 countywide assessment, the properties were assessed at $19,385,200. *Id.* In October 2012, the Board issued two decisions indicating no change in assessment. The School District appealed to the trial court. In February 2013, Taxpayer sought to intervene and asserted as a new matter that the School District's assessment appeals constituted unconstitutional spot assessments and discriminated against Taxpayer as a commercial property owner in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.

At a May 2016 hearing before the trial court, Taxpayer presented evidence as to the fair market value (FMV) of the properties for 2013 and 2016, but no testimony was elicited for tax years 2014 and 2015. Taxpayer also submitted a stipulation establishing the facts regarding its uniformity challenge.[4] The School

_____

[4] As summarized, the stipulation provided:

District presented testimony as to what the FMV should be for tax years 2013 through 2016. Both of the parties' experts testified that the properties were under-assessed. On June 1, 2016, the trial court determined assessed values for each of the two properties for 2013 through 2016 without addressing Taxpayer's uniformity and equal protection arguments. On June 10, 2016, Taxpayer filed post-trial motions arguing that it proved that the School District violated the Uniformity Clause. Thirty-one days later, the School District filed motions to strike the post-trial motions. In August 2016, the trial court granted the School District's motions. Subsequently, Taxpayer appealed the trial court's orders.

In July 2017, this Court quashed Taxpayer's appeal from the June 2016 orders for failure to file a timely appeal and affirmed the August 2016 orders striking Taxpayer's post-trial motions. In rejecting Taxpayer's argument that extraordinary circumstances supported an appeal *nunc pro tunc*, we relied on the trial court's statement that it did not invite the filing of post-trial motions or schedule argument on them. *Id*., slip op. at 8. Subsequently, Taxpayer filed a petition for allowance of appeal. Our Supreme Court denied allocator in *Marchwood I* on February 26, 2018.

---

The parties stipulated that prior to August 8, 2012, the School District had an unwritten policy to only appeal tax assessments that may result in an additional yearly tax revenue of $10,000 or more; on August 8, 2012, the School District passed a written policy to that effect; on July 11, 2012, the School District voted to authorize the appeal of 25 properties, none of which were single-family homes, townhouses, or condominiums; on July 17, 2013, the School District authorized the appeal of four more similarly[-]typed properties; the School District hired [a property tax consulting service firm]; and [it] received no direction from the School District to limit property type.

*Marchwood I*, slip op. at 4 n.1.

3

While the petition for allowance of appeal was pending, Taxpayer filed the two-count complaint herein at issue: Count 1-Uniformity Clause and Count 2-Tax Refund. By way of background, the October 2017 civil complaint for declaratory, injunctive, and tax refund relief involves the same two parcels and all of the above parties except for the County.[5] Taxpayer alleges that the County conducted its most recent countywide reassessment in 1996-97. (Complaint at ¶ 7.) With an express policy of appealing only assessments likely to generate an annual increase in tax revenue in excess of $10,000, the School District eschewed appeals of under-assessed, single-family residences and targeted high-value commercial properties. (*Id*. at ¶¶ 2, 3, and 5.) As noted, the School District appealed the assessments of 25 properties in 2012, including Taxpayer's parcels. (*Id*. at ¶ 4.) Notwithstanding the fact that thousands of residential, single-family properties were under-assessed, the School District failed to appeal from any of those assessments. (*Id*. at ¶ 5.) "The upshot of the selective appeals . . . is that a handful of properties . . . are assessed based on their current market values, while the vast majority . . . continue to be assessed based on the 1996 valuations set in the County's last countywide reassessment . . . ." (*Id*. at ¶ 7.)

In Count 1 against all Appellees, Taxpayer alleges that, absent judicial intervention, it lacks an adequate remedy at law to address Appellees' selective and systemic use of appeals to reassess certain high-value commercial properties in violation of the Uniformity Clause. By way of relief, it requests that the trial court declare that the School District's selective appeals violate the Uniformity Clause and

---

[5] Counsel for the Board and the County acknowledges that the County technically was not a party to *Marchwood I*. Nonetheless, counsel asserts that the School District provided the County with notice of the 2012 appeals, that the County had a right to intervene, and that the appeals necessarily affected the County's rights. (Brief of the Board and the County at 8.)

enjoin those appeals;[6] that the trial court declare that the increase in the assessment of its properties as a result of those appeals violates the Uniformity Clause; that the trial court order the Board to set the assessments for the tax year 2018 and beyond at the last lawful value, the one set in the 1996-97 countywide reassessment; or, in the alternative, that the trial court order the County and Board to conduct a countywide reassessment. (*Id*. at 10-11.)

In Count 2 against the School District and the County, Taxpayer avers that as a result of the increase in the assessment of its properties due to the improper selective appeals, it paid unconstitutional property taxes for tax years 2013-17. (*Id*. at ¶ 69.) Alleging that it sent written demands for refunds to the County in September 2017, Taxpayer asserts that it is entitled to a tax refund pursuant to the Refund Act, Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. §§ 5566b-5566c. (*Id*. at ¶¶ 70 and 71.) In the alternative, it alleges that equity jurisdiction should be invoked due to the inadequacy of the statutory remedy of filing for a refund. (*Id*. at ¶ 72.) Accordingly, it requests that the trial court award judgment in excess of $50,000, award pre-judgment and/or statutory interest, award fees and costs, and award such other relief as the trial court deems just. (*Id*. at 11-12.)

In June 2018, the trial court sustained Appellees' preliminary objections and dismissed Taxpayer's complaint with prejudice and without leave to replead. Following Taxpayer's appeal, the trial court issued an opinion relying upon the doctrine of res judicata and stating: "[t]hese same parties have litigated these same issues in previous litigation and the decisions in those cases is [sic] final, Taxpayer's petitions for allowance of appeal having been denied by the Supreme

---

[6] Notably, there do not appear to be any pending tax assessment appeals to enjoin in that the School District has not filed any appeals subsequent to those already litigated in *Marchwood I*. (Brief of the Board and County at 3-4.)

5

Court of Pennsylvania." (Trial Court's September 26, 2018, Op. at 1-2.) Taxpayer's instant appeal followed.[7]

By way of overview, the instant appeal presents both the doctrines of preclusion—res judicata and collateral estoppel—and the doctrine of exhaustion of available statutory or administrative remedies (doctrine of exhaustion of remedies). The doctrines of preclusion provide:

> Res judicata encompasses two related, yet distinct principles: technical res judicata and collateral estoppel. Technical res judicata provides that where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were actually litigated and necessary to a previous final judgment.
>
> Technical res judicata requires the coalescence of four factors: (1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued. Res judicata applies to claims that were actually litigated as well as those matters that should have been litigated. Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and new proceedings.
>
> Similarly, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action, and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

---

[7] A preliminary objection should be sustained only in cases when, based on the facts pleaded, it is clear and free from doubt that those pleaded facts are legally insufficient to establish a right to relief. Because a preliminary objection in the nature of a demurrer presents a question of law, our standard of review is plenary. *Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa. Super. 2008).

*J.S. v. Bethlehem Area Sch. Dist.*, 794 A.2d 936, 939 (Pa. Cmwlth. 2002) (citations omitted).

The doctrine of exhaustion of remedies, which this Court recently reiterated in another case where taxpayers attempted to bypass the tax assessment appeal process, provides:

> A party may not seek judicial resolution of a dispute until he or she has exhausted available statutory or administrative remedies. The doctrine "reflects a recognition of the general assembly's directive of strict compliance with statutorily-prescribed remedies" and it also acknowledges that "an unjustified failure to follow the administrative scheme undercuts the foundation upon which the administrative process was founded." If a party fails to pursue a statutory remedy, the court is without power to act until the statutory remedies have been exhausted, even in cases where a constitutional question is presented.

*Martel v. Allegheny Cty.*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 568 C.D. 2018, filed August 14, 2019), slip op. at 9, 2019 WL 3806977 (citations omitted).

As in *Martel*, the mandatory and exclusive remedy in the present case lies with the tax assessment appeal process. *Appeal of Cedarbrook Realty, Inc.*, 395 A.2d 613, 615 (Pa. Cmwlth. 1978). It is well established that "Pennsylvania's administrative process for challenging tax assessments provides [t]axpayers with an adequate state remedy[.]" *Murtagh v. Cty. of Berks*, 715 A.2d 548, 552 (Pa. Cmwlth. 1998)(*en banc*) [citing *Nat'l Private Truck Council, Inc. v. Ok. Tax Comm'n*, 515 U.S. 582 (1995)]. Further, those engaged in the statutory appeal process must proceed in strict accordance with the governing legislation. *Chartiers Valley Sch. Dist. v. Bd. of Prop. Assessment, Appeals and Review*, 622 A.2d 420, 428 n.16 (Pa. Cmwlth. 1993).

In the present case, the governing legislation provides that "[a]ny person aggrieved by any assessment, whether or not the value thereof shall have changed since the preceding annual assessment, or any taxing district having an interest in the assessment, may appeal to the board for relief."  Section 8844(c)(1) of the Consolidated Assessment Law (Assessment Law), 53 Pa.C.S. § 8844(c)(1). Thereafter:

> [T]he board shall determine the market value of the property as of the date such appeal was filed . . . and shall apply the established predetermined ratio to that value, unless the common level ratio last published by the State Tax Equalization Board varies by more than 15% from the established predetermined ratio, in which case the board shall apply that same common level ratio to the market value of the property.

53 Pa.C.S. § 8844(e)(2).  Following an appeal, a trial court is required to conduct a *de novo* proceeding and determine a fair market value and apply a common level ratio to arrive at the assessed value of the properties therein at issue.  53 Pa.C.S. § 8854(a)(2); *Harley-Davidson Motor Co. v. Springettsbury Twp.*, 124 A.3d 270, 287 (Pa. 2015).

Accordingly, mindful of the aforementioned doctrines and applicable law, we turn now to determining whether the trial court erred in dismissing Taxpayer's two-count complaint.

### Count 1 against all Appellees (Uniformity Clause)

Taxpayer maintains that the trial court erred in determining that res judicata applied because Taxpayer raised claims for declaratory and injunctive relief relating to tax year 2018 and beyond that constitute new causes of action that were not previously litigated.  In addition, Taxpayer asserts that collateral estoppel does

8

not apply because both the law and the facts have changed since the litigation of the appeals for the prior tax years.

Both the doctrines of preclusion and the doctrine of exhaustion of remedies come into play regarding Count 1. With respect to the assessments for tax years 2013 through 2016, the doctrines of preclusion bar Taxpayer's attempt to challenge those prior assessments because they were determined in *Marchwood I*. Specifically, there was a final judgment in the trial court from which Taxpayer failed to file a timely appeal. In addition, Taxpayer was a party in the prior action and had a full and fair opportunity to litigate the issue. Further, the trial court's determination resolving the appeals was essential to the judgment. 53 Pa.C.S. § 8854(a)(2) (trial court's statutory duties in *de novo* proceeding). Consequently, Taxpayer is improperly attempting to relitigate its constitutional challenge that could have been litigated in *Marchwood I* and would have been decided there had it filed a timely appeal and preserved the challenge it raised in the trial court.[8]

With respect to the tax years subsequent to those adjudicated in *Marchwood I*, Taxpayer is correct that the doctrines of preclusion are inapplicable. However, the doctrine of exhaustion of remedies applies in that Taxpayer's mandatory and exclusive statutory remedy for those subsequent years is a tax assessment appeal wherein the issues it seeks to assert could have or can be raised. *Martel*; *Appeal of Cedarbrook Realty, Inc.*, 395 A.2d at 615. Moreover, that remedy

---

[8] Further, we note that Taxpayer's petition for allowance of appeal was still pending in our Supreme Court when *Valley Forge Towers Apartments, N, LP v. Upper Merion Area School District*, 163 A.3d 962, 968 (Pa. 2017), was decided, and new constitutional decisions will generally be applied to cases pending on appeal. *See Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991) (holding that "a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occurs before the judgment becomes final."). While we do not address this issue here, we note that in *Valley Forge* our Supreme Court explained the "*use of a monetary threshold*" may be constitutional "if it were implemented *without regard to the type of property* or the residency status of its owner." *Valley Forge*, 163 A.3d at 979 (emphasis added).

9

precludes an action for declaratory judgment. *Deigendesch v. Cty. of Bucks*, 482 A.2d 228, 233 (Pa. 1984). It also precludes the exercise of equity jurisdiction over a taxpayer's uniformity clause challenge. *Lutes v. Fayette Cty. Bd. of Assessment Appeals*, 936 A.2d 573, 576 (Pa. Cmwlth. 2007); *Jordan v. Fayette Cty. Bd. of Assessment Appeals*, 782 A.2d 642, 644 (Pa. Cmwlth. 2001). Instead, a board of assessment appeals is the proper authority to hear a constitutional attack against the application of a tax statute. *Jordan*, 782 A.2d at 646 [citing *Consol. Gas Supply Corp. v. Cty. of Clinton*, 470 A.2d 1113, 1115 (Pa. Cmwlth. 1984)(*en banc*)].

As Taxpayer acknowledges, a taxpayer has the right to file a tax assessment appeal every year and challenge its assessment pursuant to 53 Pa.C.S. § 8844(c)(1). (Complaint at ¶ 27.) Where a board renders a decision unfavorable to the taxpayer, the aggrieved taxpayer may file an appeal with the trial court. *Chartiers*, 622 A.2d at 427. At that time, a taxpayer may seek an injunction pursuant to Pennsylvania Rule of Civil Procedure No. 1531 and a declaration as provided in the Declaratory Judgments Act.[9] *Martel*, ___ A.3d at ___, slip op. at 11-12. Accordingly, the trial court properly dismissed Count 1.

### Count 2 against the School District and the County (Tax Refund)

With respect to Count 2 (Tax Refund), Taxpayer asserts that Section 1 of the Refund Act, 72 P.S. § 5566b, expressly permits a party to seek a tax refund even after a tax challenge has been finally decided when the interpretation of the law under which the tax was assessed has subsequently been determined to be unconstitutional as it claims was done in *Valley Forge*. We disagree.

The trial court in the present case correctly ruled that the doctrines of preclusion barred Taxpayer's attempt to relitigate its constitutional challenge to change the assessment for tax years 2013-2016. Simply put, Taxpayer cannot go

---

[9] 42 Pa.C.S. §§ 7531-7541.

back to relitigate the previously adjudicated tax assessment appeals and use a civil action to undo the results of that exclusive statutory appeal process. As noted, the assessments ordered by the trial court in *Marchwood I* became final when Taxpayer's appeal therefrom was quashed and our Supreme Court denied allocator. Where a taxpayer fails to file a timely appeal as prescribed by the applicable assessment law, such statutorily prescribed remedy is "lost beyond recall." *Lutes*, 936 A.2d at 580-81.

Moreover, specifically with regard to refunds, this Court has held that the Refund Act does not permit a taxpayer to retroactively appeal prior assessments and seek retroactive tax refunds to correct past non-uniform assessments. *Id*. at 580. In other words, Section 1 of the Refund Act, 72 P.S. § 5566b, does not permit a taxpayer to revive a claim that has already been litigated and where a final order was entered. By virtue of Taxpayer's failure to appeal the trial court's orders, it cannot now claim that the taxing districts were not legally entitled to the taxes paid in accordance with the court-determined assessment in *Marchwood I*. Accordingly, to the extent that Taxpayer in the 2017 complaint attempted to revive claims that were "lost beyond recall," the trial court correctly determined that those claims were barred.

For the above reasons, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marchwood Associates GP, LLC, t/a
Marchwood Associates, L.P.,
                  Appellant

            v.

Downingtown Area School District and
Chester County Board of Assessment
Appeals and Chester County

:
:
:
:
:
:      No. 972 C.D. 2018
:
:
:
:

# **O R D E R**

AND NOW, this 18th day of September, 2019, the order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge