Margaret Calcagni, Appellant *v.* Board of Assessment Appeals of Lehigh County, Pennsylvania, Appellee.

Argued October 10, 1980, before Judges ROGERS, MACPHAIL and PALLADINO.

40

*Richard J. Orloski, Stamberg, Caplan & Calnan*, for appellant.

*Alfred K. Hettinger*, Assistant County Solicitor, with him *John E. Roberts*, for appellee.

OPINION BY JUDGE ROGERS, November 26, 1980:

Margaret Calcagni has appealed from an order of the Court of Common Pleas of Lehigh County dismissing her appeal from the assessment of her home property for local tax purposes.

In September 1977 Ms. Calcagni's newly erected home at 218 East Fairview Street, Allentown, Pennsylvania was assessed for $11,130.00 based on a market value of $22,250.00. Ms. Calcagni appealed the assessment to the Board of Assessment Appeals without success. She appealed to the court below, asserting that the county's assessments were improperly made and that they lacked uniformity.[1] The court be-

---

[1] Ms. Calcagni also contended below that the county's determinations of fair market values of all properties were invalid because these values were derived by using reproduction cost less deprecia-

low dismissed her appeal. On Ms. Calcagni's appeal to this court, we remanded so that Ms. Calcagni might again offer in evidence the assessment records of other properties in her neighborhood, which we believed should not have been excluded. *Calcagni v. Board of Assessment Appeals of Lehigh County*, 38 Pa. Commonwealth Ct. 525, 394 A.2d 663 (1978).

Additional hearings were held and the wanted assessment records were admitted. Ms. Calcagni offered the expert testimony of Franklin G. Trenge, a real estate broker. She also called as on cross-examination Robert Hanisits, the person charged with making assessments. The Board of Assessment Appeals placed into evidence the tax assessment records of Ms. Calcagni's property and adduced the testimony of Mr. Hanisits and of Dan Jarrett, a real estate appraiser. The court again dismissed the appeal and the matter is again here.

Ms. Calcagni first says that the trial judge improperly excluded her expert's, Mr. Trenge, testimony: that the market value of properties in her neighborhood were in the range from $16,000 to $29,000; that it was his belief that figures appearing in the County's assessment records under the heading "replacement value" actually show market value; and that it is his opinion that the application by the county assessors of a depreciation factor to replacement values to reach market value caused the fair market value of many properties in the neighborhood other than her own to be undervalued for assessment purposes.

_____

tion. *See, e.g. Pennsylvania's Northern Lights Shoppers City, Inc. Appeal*, 419 Pa. 31, 213 A.2d 268 (1965). The lower court held that the county employed proper methods in arriving at fair market value. Ms. Calcagni has not challenged this holding in her appeal to this court. We agree that it is ineffective in view of the chief assessor's testimony as to the elements considered in arriving at deductions for depreciation.

The hearing judge seems to have excluded Mr. Trenge's opinion of values because the witness's investigation consisted only of observations of the neighborhood from his automobile and for the further reason that the witness's opinion was based in part at least upon a written appraisal not in the record prepared by another expert.

With respect to the things in the assessment records about which Mr. Trenge was asked but not permitted to comment, we note that the records were in evidence, that they showed figures for replacement value and depreciation and, indeed, also for appraised value and assessed value. The county's chief assessor testified at length on direct and cross-examination on all these subjects. Mr. Trenge's opinion of what the records purported to show or what they should be interpreted as showing was not one to which his training as a real estate broker lent any special value. Whether to hear or exclude it was clearly for the judge. A trial judge's rulings on the admissability or not of expert opinions will not be reversed on appeal except for clear error. *New Castle Central Renewal Associates Appeal,* 36 Pa. Commonwealth Ct. 584, 587, 389 A.2d 225, 227 (1978). There was none such here.

Further on this subject, Ms. Calcagni was not harmed by the judge's rulings. The $16,000 to $29,000 range of values was testified to by the county's expert, Mr. Jarrett, with the qualification that properties in the neighborhood were predominantly within this range although there were exceptions for properties worth as little as $9000; and, as we have said, the assessment records were in evidence.

On the merits, we agree with the court below that Ms. Calcagni did not carry her burden of proving that she was the victim of a non-uniform assessment. Her property at 218 East Fairview Street is one of a row

of five townhouses erected in 1977. The County assessor assigned market values for these dwellings of between $22,500 and $22,880 and, pursuant to the county's predetermined ratio of assessed to market value of 50%, assessed them from $11,130 to $11,450. Specifically, Ms. Calcagni's property for which she paid $28,400 was given a market value of $22,250 and assessed at $11,130. She compares these figures not to those assigned to the other new townhouses but to those assigned to about 100 properties in the neighborhood, most of which bear market values of from $10,000 to $16,000 and assessments from $5,000 to $7,000. She then points to Mr. Jarrett's testimony that most of the homes in the neighborhood ranged in value of $16,000 to $29,000. Thus she says that it is demonstrated that the market value and assessment of her property is too high. This unacceptable condition, she argues, derives from the fact that the county assessor first computed the replacement value of properties and then to arrive at market value deducted an amount for depreciation factor based entirely on the age of the building. Unfortunately for the appellant the unrebutted evidence of record consisting of the chief assessor's testimony was to the effect that included within depreciation were considerations not only of the age of the building under study but the type and quality of construction, the condition of repair, the nature of the immediate neighborhood, the type and quality of other buildings in the vicinity, and the values of comparable properties.

Furthermore, Ms. Calcagni adduced no evidence showing the actual value of any property in the neighborhood, much less of any property shown to be comparable to her own. It is conceivable that her dwelling and the other new townhouses in the development all bearing like assessments, also had higher market values than other properties in the neighborhood. It

was clearly not a sufficient showing of non-uniformity that many of the 100 or more other properties bore lower market values and assessments than hers without showing that other properties comparable to hers and of actual values as great as hers, were assigned lower market values. Her proof failed for exactly the same reason as those of the taxpayer in *Valley Forge Golf Club, Inc. v. Tax Appeal,* 3 Pa. Commonwealth Ct. 644, 285 A.2d 213 (1971), where the owner of a golf course complained that its property had been assigned a market value higher than other golf courses because the per hole value used as a basis of arriving at the value of golf courses assigned to its course was higher than that assigned to other courses. We held that no case for lack of uniformity had been made out because the taxpayer had failed to show the actual value of any golf course. We there wrote:

> Hence, in this case Valley Forge properly set about to prove lack of uniformity in its assessment by directing the court's attention to the assessment of other golf courses located in Montgomery County. It did not, however, pursue the inquiry to the point required by the law. It failed to prove that the actual value of any of the other assertedly similar properties was different from that found by the assessors. The absence of such proof rendered impossible a determination that the assessments of these other golf courses were at a ratio of assessed to actual value different from the admitted standard of one-third.

*Id.* at 650, 285 A.2d at 216.

Here, Ms. Calcagni properly set about to prove lack of uniformity by directing attention to other dwelling houses in the neighborhood; but she failed to prove that the actual value of any other property in the neighborhood was different from that found by the

county assessors, making it impossible for anyone to conclude that she was unfairly assessed.

But, Ms. Calcagni says, the assessment records show actual sale prices of other properties and fair market value assigned far less, proportionately, than those assigned in the case of her property. Of the 100 or so properties whose records are reproduced in her brief, sales prices are shown for about 25. Ms. Calcagni paid $28,400 for her property and it has been assigned a market value of $22,250 or 78% of sales price. At the hearing Ms. Calcagni directed the court's attention to six other properties, the sales prices of which ranged from $17,000 to $27,400 with market values fixed by the assessor of from a low of 47% of the sales price to, in one instance, almost 70%. There are two difficulties with this asserted demonstration of lack of uniformity. The first is that sales prices are only one factor to be considered in determining fair market value. Section 402(a) of The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-402(a) provides that actual sales shall be considered in valuing properties for assessment purposes but that they are not controlling and must be revised to accomplish equalization. Second, Ms. Calcagni was somewhat selective in directing the court's attention to recent sales. Others, not specifically mentioned by the appellant below, show market values assigned for assessment purposes of 95%, 131% and 142%[2] of the sales prices noted in the records. Ms. Calcagni's contention that these aspects of the assessment records prove her case is also ineffective.

Order affirmed.

---

[2] The properties here referred to are, respectively, 248 East Fairview Street, 305 South Bradford Street and 301 South Bradford Street.

<span style="display:block; text-align:center;">ORDER</span>

AND Now, this 26th day of November, 1980, the order of the Court of Common Pleas of Lehigh County, No. 106 January Term, 1978, is affirmed.