635 A.2d 737

**Joseph W. GITNEY and Kathy L. Jackson, Appellants,**

v.

**BERKS COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted April 5, 1990.

Decided Dec. 23, 1993.

648

James A. Cunningham, for appellants.

Louis R. Rizzuto, for appellee.

Before DOYLE and SMITH, (P.), JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Joseph W. Gitney and Kathy L. Jackson appeal an order of the Court of Common Pleas of Berks County (common pleas court) assessing the property they purchased in 1986 for $44,000 at an assessment value of $4,000 for the year 1987 and $3,680 for the year 1988.

Gitney and Jackson purchased the property at 325 E. Third Street in Boyertown on February 28, 1986, for the sum of $44,000. At the time they purchased the property, the as-

sessed value was $2,400. On August 29, 1986, however, the property was reassessed to an assessed value of $4,400, effective January 1, 1987. Gitney and Jackson challenged the reassessment. After holding a hearing, the Berks County Tax Assessment Board (Board) reduced the assessed value to $4,000. Gitney and Jackson appealed that decision to the common pleas court at Assessment Docket No. 236, November 1986 challenging the assessment for the tax year 1987.

Gitney further appealed to the Board from the assessed value assigned to the property for the tax year 1988. The Board held a hearing on that appeal and reaffirmed its earlier assessed value of the property of $4,000. Gitney filed an appeal with the common pleas court for the 1988 assessment as sole owner [1] at Assessment Docket No. 345, October 1987, and the two appeals were consolidated.

At the hearing *de novo* held on August 26, 1988 in the common pleas court, the Board moved into evidence, without objection, the tax assessment roll for Berks County.[2] The Board then rested. Gitney then testified that the original purchase price of the house on February 28, 1986, was $44,-000. Gitney also produced an expert appraiser who testified to **assessments** of comparable properties. During the course of the hearing, counsel for Gitney indicated that he had subpoenaed records from the Board which related to the data used to compute the common level ratio (CLR) used by Berks County, but that these requested records were never produced. He specifically requested the letter from the State Tax Equalization Board (STEB) that established the CLR used by the Board for the tax years 1986 and 1987 after Clarence Hess, the chief tax assessor for Berks County, testified that the CLR the Board applied for those years was 10.8%.[3] Counsel for the Board stated that he would produce

1. Gitney purchased Jackson's interest in the property on February 10, 1987, for $5,000.

2. Berks County is a County of the Third Class.

3. The term **"common level ratio,"** or CLR, is defined in Section 1.1 of the Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. § 5342.1, as "[t]he ratio of assessed value to current market value used generally in

those documents. At the close of the hearing, the court declared that the hearing would be *continued* for the purpose

the county as last determined by the State Tax Equalization Board pursuant to the Act of June 27, 1947 ..., referred to as the State Tax Equalization Board Law." The term has been derived from the principle that a taxpayer should pay no more or no less than his proportionate share of the cost of government. *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 209 A.2d 397 (1965). A taxpayer's assessed value should conform with the common level ratio in the taxing district. Where the evidence shows that the assessors have applied a fixed ratio of assessed value to market value throughout the taxing district, then that ratio constitutes what is known as the common level ratio.

Each year, STEB establishes for each county in the Commonwealth, a common level ratio. *See* Section 16.1 of the State Tax Equalization Board Law, Act of June 27, 1947, P.L. 1046, *as amended*, 72 P.S. § 4656.16a. STEB publishes the common level ratio for each county prior to July 1 of each year in the Pennsylvania Bulletin. The methodology which STEB uses in determining the common level ratio is to include every valid sale with a ratio from 1% to 100% and to compute a mean. Using this mean as a base, the STEB has defined high and low limits by multiplying and dividing this computed mean by 4. By using these computed limits, the STEB utilizes the valid sales and rejects those sales which exceed the limits. The resulting arithmetic mean ratio is the common level ratio.

The term **"established predetermined ratio,"** or EPR, is also defined in Section 1.1 of the Act as follows: "[t]he ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year." Pursuant to Section 8(d.2) of the Act, 72 P.S. § 5349(d.2), in any board of assessment appeal the county board of assessment must apply the established predetermined ratio to the market value which it has determined unless the common level ratio published by STEB on or before July 1 of the year prior to the tax year on appeal before the board varies by more than 15% from the established predetermined ratio. If the common level ratio varies by more than 15% from the established ratio, the board must apply that common level ratio to the market value of the property.

In the case at bar, the common pleas court subsequently used 10% as the common level ratio for the tax year 1987, and 9.2% as the common level ratio for the tax year 1988.

Although the record is unclear as to what the established predetermined ratios were in Berks County for 1987 and 1998, we presume that the chief tax assessor meant to use that term, "established predetermined ratio," when he said that the "common level ratio" used by the County of Berks for 1987 and 1988 was 10.8% (N.T. 8/26/88 at 8, 13, 14). The EPR of 10.8% does not vary by more than 15% from the CLR of 10% for 1987 and was off by only .022% (.00022) from the 9.2% for 1988. Thus, the Board's EPR was in substantial accord with Section 8(d.2) of the Law, and any noncompliance is of no consequence because the common pleas court adopted the STEB CLR for the years in question.

of taking any additional evidence required. A subsequent hearing was held by the court on October 31, 1989, at which time the court took additional evidence establishing the applicable common level ratios for Berks County from 1982 through the tax year 1987.

The additional evidence consisted of the annual pronouncements, in letter form, from the State Tax Equalization Board from May 24, 1983 (establishing the CLR for the tax year 1982), through June 14, 1988 (which established the CLR for the tax year 1987). All six pronouncements were certified as "true and correct common level ratios ... for the years indicated" by a covering letter from the Director of STEB. Counsel for Gitney objected to the admission of that evidence on the ground that it was improper to "reopen" the case to allow additional evidence in the record, when that evidence should have been produced pursuant to his subpoena at the earlier hearing.

The common pleas court in its opinion established that the common level ratio for Berks County for the 1987 tax year was 10% and for the tax year 1988 was 9.2%. The court also found that the fair market value of Gitney's property in 1987 and 1988 was $40,000 and thus placed the assessed value of the property for 1987 at $4,000 and at $3,680 for 1988. The common pleas court rejected the testimony of Gitney's expert and found that he had failed to take into consideration *all* of the real property in the taxing district:

In the case at bar, the taxpayer's expert failed to take into consideration all real property in the taxing district. The opinion thus formulated was insufficient to sustain the burden of proof required under the law.

The constitutional uniformity requirement mandates that the assessment of a particular property shall reflect an assessment at not more than the common level of assessments prevailing in the district as a whole.

Common Pleas Court Opinion at 6.

■ From the court's order, Gitney appeals to our Court[4] asserting that the lower court erred in shifting the burden of proof to him because the Board failed in the first instance to present a prima facie case. Gitney argues that the Board was required to introduce both its assessment records *and* evidence of the common level ratios in order to establish its prima facie case and the court erred in "reopening" the case, without a proper showing of good cause, to permit the Board to present additional evidence establishing the common level ratios. He further argues that it was an abuse of discretion to admit the STEB pronouncements when those very records were subpoenaed before the first hearing but never produced by the Board.

Gitney's argument is flawed, however, because the hearing and record were never "closed" at the conclusion of the first hearing, but only continued. This means, therefore, the hearing was never "reopened." At the first hearing counsel for Gitney said that he had subpoenaed records from the Board that related to data or computation of the common level ratio used by Berks County. These records were in fact not produced, but counsel for the Board indicated that he would produce those documents and the court *continued* the hearing for the purpose of allowing the additional evidence. The court's decision to accept evidence at a later date, therefore, was not an abuse of discretion. Furthermore, the common pleas court is entitled to take judicial notice of the published rules and regulations of administrative agencies in this state.[5]

**4.** Our scope of review in a tax case where the lower court has heard the matter *de novo* is limited to a determination of whether the lower court's decision is supported by substantial evidence, is in accordance with law, or whether the lower court abused its discretion. *Albarano v. Board of Assessment and Revision of Taxes and Appeals, Lycoming County,* 90 Pa.Commonwealth Ct. 89, 494 A.2d 47 (1985).

**5.** *See* Section 16.1 of the State Tax Equalization Board Law, Act of June 27, 1947, P.L. 1046, *as amended,* 72 P.S. § 4656.16a; Section 16.1 was added by Section 3 of the Act of December 13, 1982, 72 P.S. § 4656.-16a, and pertinently provides:

**Establishment of a common level ratio**

(a) The state Tax Equalization Board shall, annually, prior to July 1, establish for each county a common level ratio for the prior calendar year.

45 Pa.C.S. § 506. Even if the common pleas court had not allowed the additional evidence, the court could still have taken judicial notice of the STEB CLR's without its actual production because they are published in the *Pennsylvania Bulletin.* Thus, it was not an abuse of discretion to allow this evidence to be part of the record.

Next, Gitney argues that the Board did not present a prima facie case because it failed to establish proof of market value of the subject property or proof of any rational basis for the $4,000 assessment.

It is well settled that the admission into evidence of the assessment records establishes a prima facie case for establishing the validity of the assessed value of a property. *City of Wilkes–Barre Industrial Development Authority v. Board of Tax Assessment Appeals of the County of Luzerne,* 89 Pa.Commonwealth Ct. 182, 492 A.2d 113 (1985). When a prima facie case is established, the taxpayer then has the burden of coming forward with competent, relevant evidence to rebut the validity of the assessment. *Id.*

The Board's evidence consisted of the assessment rolls maintained by Berks County for the tax period beginning January 1, 1987, containing the assessed value of the subject property and of property in the surrounding area for the years 1984 through 1988 and, at the continued hearing, documents indicating the common level ratios for Berks County for the years 1982 through 1987 published by STEB. The assessment rolls alone establish a prima facie case on the part of the Board and there is no requirement that the market value of the subject property, nor the market values of surrounding properties, be introduced by the Board. We therefore find as a matter of law that the evidence was sufficient for the Board to have established a prima facie case. *Deitch,* 417 Pa. 213,

> (b) In arriving at such ratio, the board shall use statistically accept-able techniques, including sales ratio studies. The board's method in arriving at the ratio shall be made available to the public. The ratio shall be certified to the chief assessor of each county *and it shall be admissible as evidence in any appeal involving real property tax assess-ments.* (Emphasis added.)

209 A.2d 397 (1965); *Appeal of John Wanamaker,* 360 Pa. 638, 63 A.2d 349 (1949).

Gitney next asserts that his property was invalidly reassessed. To rebut the validity of the assessment, Gitney produced a real estate valuation expert who testified that he looked at homes in the proximity of the Gitney property and then testified as follows:

A. I determined that in relation to the assessments on these properties, Gitney was way over assessed.

Q. Specifically what did you find with 219 Third Street?

A. Well 219 is a superior property. It's a little bit larger than Gitney['s]. It will bring more money on the market. It will probably bring ten percent more than the Gitney home would bring, in excess of X plus ten.

. . . .

Q. [W]ith respect to market value, did you find its market value to be superior or inferior?

A. The market value of this home would be far in excess of Gitney['s].

(N.T. 8/26/88 at 59).

█ A property owner claiming that his assessment is not uniform must carry his burden of proof by showing that a lower ratio of assessment to **actual value** (fair market value) has been applied to comparable properties. *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965). Evidence of assessments of comparable properties alone is not sufficient to satisfy the appellant taxpayer's burden. *Albarano.* The court in *Albarano* stated the importance of presenting evidence with respect to market value as follows:

Where a property owner presents proof of assessments of comparable properties but fails to offer any evidence as to market value, the property owner cannot sustain his burden of proof as a matter of law in that the common pleas court has no information upon which to make a finding as to the current market value and apply the established predetermined ratio to determine the issue of uniformity. *Calcagni*

*v. Board of Assessment Appeals of Lehigh County,* 55 Pa.Commonwealth Ct. 39, 423 A.2d 24 (1980); Valley Forge Golf Club, Inc. Tax Appeal. As appellants were only offering evidence of the *assessments* of comparable properties and specifically stated that they were not prepared to offer evidence on the issue of *market value,* there was no way in which they could have prevailed as to their uniformity challenge.

*Id.,* 90 Pa.Commonwealth Ct. at 93, 494 A.2d at 49 (emphasis in original).

In *Albarano,* the taxpayers attempted to challenge the uniformity of their assessments before the common pleas court by presenting evidence of assessments of properties comparable with theirs, rather than evidence of fair market value. When the taxpayers failed to produce evidence as to market value, the trial court dismissed their appeal with prejudice. On appeal, this Court held that the taxpayers did not meet their burden of proof because without evidence to show that the actual value of comparable properties was different from that found by the Board, the common pleas court had no information to make a finding as to the current market value and to determine the issue of EPR uniformity.[6]

Under *Albarano,* Gitney should have presented evidence on fair market value instead of presenting general testimony qualifying certain properties as inferior or superior to his property. *See also Monroe County Board of Assessment Appeals v. Karlin,* ─── Pa.Commonwealth Ct. ───, 631 A.2d 1062 (1993).

The testimony of Gitney's expert, therefore, was insufficient to satisfy his burden of proof. Although Gitney properly produced evidence of assessments of comparable properties, he did not produce any evidence as to the fair market value of

**6.** Succinctly stated, the holding in *Albarano* is that while a property owner may establish a prima facie rebuttal case to the taxing authority's prima facie case in chief under *Deitch,* by showing disparate *assessments,* "the taxpayer still carries the burden of persuading the court of the merits of his appeal." *Id.,* 417 Pa. at 222, 209 A.2d at 402. And, the production of evidence establishing *the fair market value* of the comparable properties is still required.

his comparables. The testimony of Gitney's expert that the market value of comparable pieces of property "would be far in excess" of Gitney's property is simply not sufficient to satisfy Gitney's burden of proof in rebutting the Board's evidence.

■ Last, Gitney asserts his assessment violates the Uniformity Clause found in Article 8, Section 1, of the Pennsylvania Constitution[7] and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. It must be understood that Gitney is not attacking the $4,000 and $3,680 assessments on the theory that his home is not worth the fair market value upon which the assessments were premised. Rather, he is saying that other comparable homes within his neighborhood are assessed at much less than his because the assessments of those homes do not reflect their current fair market values, and, consequently, he is bearing more than his fair share of the tax burden.

A constitutional argument of this type was addressed by the United States Supreme Court in *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). In *Allegheny Pittsburgh,* the coal mining company taxpayers demonstrated that their properties were reassessed upwards based upon the fair market values established by their recent purchase prices, and that the reassessments resulted in assessments that were eight to thirty-five times the rate of that applied to the owners of comparable properties which had not been recently conveyed. They further demonstrated that these discrepancies continued for more than ten years with little change. Some adjustments were made in the assessments of properties that had not been recently sold, although they amounted, at most, to 10% increases. In all of the examples considered, the comparisons were based upon the actual consideration paid for the properties. Such a situation

7. Article 8, Section 1 of the Pennsylvania Constitution provides:
   All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

was held to be violative of the Equal Protection Clause of the United States Constitution. The High Court observed:

> The Equal Protection Clause 'applie[d] only to taxation which in fact bears unequally on persons or property of the same class.' ... The use of a general adjustment as a transitional substitute for an individual reappraisal violates no constitutional command. As long as general adjustments are accurate enough over a short period of time to equalize the differences in proportion between the assessments of a class of property holders, the Equal Protection Clause is satisfied. Just as that Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes, ... it does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.
>
> . . . .
>
> But the present action is not an example of transitional delay in adjustment of assessed value resulting in inequalities in assessments of comparable property. Petitioners' property has been assessed at roughly 8 to 35 times more than comparable neighboring property, and these discrepancies have continued for more than 10 years with little change. The county's adjustments to the assessments of property not recently sold are too small to seasonably dissipate the remaining disparity between these assessments and the assessments based on a recent purchase price.

*Id.* at 343–44, 109 S.Ct. at 638 (citations omitted).

The United States Supreme Court then concluded that the West Virginia Supreme Court's proposed remedy, *i.e.,* to *increase* the assessments of the *undervalued* property was constitutionally insufficient as a remedy for the taxpayers.

But in the case now before us, Gitney has fallen far, far short of presenting the extensive record that is required to establish a systematic and intentional discriminatory tax as-

sessment system that would be constitutionally violative of the due process and equal protection guarantees, and the uniformity required by the Pennsylvania Constitution.

Having determined that Gitney failed to satisfy his burden of proof, we affirm the order of the common pleas court.

## *ORDER*

NOW, December 23, 1993, the order of the Court of Common Pleas of Berks County in the above-captioned matter is hereby affirmed.

PALLADINO, J., did not participate in the decision in this case.