Steven FINTER, Appellant

v.

WAYNE COUNTY BOARD OF AS-
SESSMENT APPEALS and the
Wayne County Commissioners.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 23, 2005.
Decided Dec. 30, 2005.

Steven W. Finter, appellant, pro se.

Lee C. Krause, Honesdale, for appellee.

BEFORE: PELLEGRINI, Judge, and
FRIEDMAN, Judge, and McCLOSKEY,
Senior Judge.

OPINION BY Judge PELLEGRINI.

Steven Finter (Property Owner) appeals *pro se* an order of the Court of Common Pleas of Wayne County (trial court) affirming the Wayne County Board of Assessment Appeals' (Board) assessment of his property located in Paupack, Pennsylvania.

Property Owner resides in Westfield, New Jersey, but owns property in Paupack, Pennsylvania, consisting of .2811 acres which is improved with a house. The Board placed an assessment on the property for 2005 of $532,900 with the land valued at $246,900 and the improvements at $286,000. After appealing to the Board which affirmed, Property Owner appealed to the trial court[1] alleging that the Board made an erroneous determination of the fair market value in its assessment of the house, and that it violated the uniformity clause of the Pennsylvania Constitution[2] because the impact of the assessment bore unequally on him because his assessment was substantially higher than assessments on comparable properties.[3]

After the Board, through John Nolan (Nolan), Wayne County's chief assessor, introduced into evidence Property Owner's property record cards, his assessment, deed and appraisal, the burden shifted to Property Owner to present evidence rebutting the Board's assessment.[4] Property Owner testified that he purchased the lakefront property in 1999 for $225,000 which at that time had an unfinished basement, a first floor with a fireplace, large living room and a kitchen, and a second floor with five bedrooms and two and one-half bathrooms, but had no garage. He stated he did some "repair work" to the basement in 1999 because the back wall was collapsing, but it was not a living space. Eventually, he admitted on cross-examination that the basement had walls with paneling and it had been furnished. Property Owner argued that his home, which had almost an identical footprint to the neighboring home belonging to the Ericsson family, was smaller than the Ericsson's home which had been assessed for a lot less than his property. He pointed out that the Ericsson's had a two-car garage, an additional bedroom and more land. Also, they had a porch that was fully enclosed. He stated that the Ericsson's land had originally been assessed at

---

1.  A tax assessment appeal is heard *de novo* by the trial court. *See* Section 704 of The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, *as amended*, 72 P.S. § 5453.704.

2.  A common level of assessment is required by Article VIII, Section 1 of the Pennsylvania Constitution, which states that, "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax ..." Our courts have interpreted the uniformity requirement as "the principle that a taxpayer should pay no more or no less than his proportionate share of the cost of government." *Deitch Company v. Board of Property Assessment*, 417 Pa. 213, 220, 209 A.2d 397, 401 (1965).

3.  Property Owner also argued that the assessment was erroneous because it violated the

equal protection clause of the 14th Amendment of the United States Constitution and that the assessment did not reflect the current market values of the property as multiplied by the state mandated ratio as determined by the State Tax Equalization Board. He also argued that the assessment lacked uniformity, was discriminatory and was otherwise unjust and inequitable.

4.  In a tax assessment appeal, once the Board admits into evidence the assessment records, that establishes a *prima facie* case for establishing the validity of the assessed value of the property. *Gilmour Properties v. Board of Assessment Appeals of Somerset County*, 873 A.2d 64 (Pa.Cmwlth.2005). Once the *prima facie* case is established, the property owner/taxpayer has the burden to come forward with competent, relevant evidence to rebut the validity of the assessment. *Id.*

$5,280 in 1970, where his land had been assessed at $1,700, and the Ericsson's home had originally been assessed at $4,850, where his home had been assessed at $6,940. Property Owner stated that after the 2004 reassessment, the Ericsson's land went to $227,600 and their house went to $73,300, while Property Owner's land was reassessed at $246,900 and his house was reassessed at $286,000.

Venald Bovard (Bovard), a real estate appraiser, testified on behalf of Property Owner, stating that he did a market data approach utilizing three comparables.[5] The first comparable sold for $275,000 in February of 2004, the second sold for $270,000 in January of 2004, and the third sold for $255,000 in July 2004. He concluded that Property Owner's property should have been valued at $290,000. On direct-examination, however, he stated that he was unaware that Property Owner's property was improved from the date of purchase to the present time; that he did not take into consideration that the basement area had been finished to include 540 square feet because it was "underground and could not be considered living space;" he could not remember if one of the comparables had a second floor as did Property Owner's property, but it probably did not due to the fact that Property Owner's property was listed as having 1,920 square feet and the comparable only had 1,000 square feet; and he was unclear whether another comparable was lakefront when Property Owner's property was definitively lakefront.

Nolan, who stated that he had been working as an assessor since 1972 and had been the chief assessor since 1986, ex-plained that the Board utilized the market value approach when assessing properties in the county, and that they used comparables to establish the assessed values of the properties. Nolan also explained that Property Owner's property was lakefront property and a two-story structure. He then testified that when the assessment was performed, the square footage of the renovated basement had not been taken into consideration. Also, sometime in 2003, the roof line had been changed to make it a full two-story home as opposed to the original structure which was a one-story with an attic or a one-and-a-half at best. As to his market approach using comparables, Nolan stated that he used five different properties, each with similar square footage to that of Property Owner's property, i.e., two-story homes, and that each were lakefront properties. Based on those criteria, he found that comparison number 1 sold for $240,000 on January 17, 2003; comparison number 2 sold for $1,012,000 on September 29, 2003; comparison number 3 sold for $400,000 on August 7, 2003; comparison number 4 sold for $192,000 on January 15, 2003; and comparison number 5 sold for $535,000 on July 14, 2003. Finally, as far as using the Ericsson property as a comparable, there were major differences between the properties because there had been no improvements to that property since the 1930's while Property Owner had made improvements to his home in the basement and on the roof lines on the front and the back.

Not addressing the uniformity challenge, the trial court found that Property Owner's expert appraiser was not credible be-

5. The market data approach, also known as the sales comparison approach, the approach most useful for appraising residential property, compares the subject property to other similar properties which have been sold, giving consideration to the size, age, physical condition, location, neighborhood, extra amenities, date of sale, lot size, style of building, unique features and type of financing. *Cedarbrook Realty, Inc. v. Cheltenham Township*, 148 Pa.Cmwlth. 310, 611 A.2d 335 (1992).

cause he used faulty comparables, and the Board had made out a *prima facie* case for the validity of the assessment because its comparables were based on comparable properties that "were truly comparable." (Trial court's May 13, 2005 decision, finding of fact 6.) It then ordered that the market value of Property Owner's property was $532,900, with the land valued at $246,900 and the market value of his house at $286,000. This appeal by Property Owner followed.[6]

■ On appeal, Property Owner only appears to be arguing that the assessment on his property violates the uniformity provisions of the Pennsylvania Constitution. When making a uniformity challenge, the property owner admits that the fair market value assigned to its property is correct and, in essence, the challenge is an allegation that other comparable properties are assigned a fair market value substantially lower than their actual fair market value, so that when the ratio is applied to that lower value, owners of comparable property have paid less than the complaining taxpayer. *Banzhoff v. Dauphin County Bd. of Assessment Appeals*, 146 Pa.Cmwlth. 687, 606 A.2d 974 (1992). Property Owner contends that the assessment on his property is substantially higher than the assessment on the Ericsson property, a larger piece of property and a larger structure than his own. He requests that the trial court be reversed and that we order the Board to assess his land and home at $300,900, the same assessment as the Ericsson property.

■ There are a number of fatal flaws to Property Owner's uniformity challenge. First, a uniformity challenge can no longer be brought by attempting to establish that comparable properties are under assessed compared to their fair market value.[7] *Baechtold v. Monroe County Board of Assessment Appeals*, 804 A.2d 713 (Pa.Cmwlth.2002). Second, even if Property Owner could bring such a uniformity challenge, just because one property is under assessed compared to another does not mean that the uniformity clause of the Pennsylvania Constitution is violat-

6. Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law, and whether the trial court's findings are supported by substantial evidence. *Applied Technology Products Corp. v. Radnor Twp.*, 882 A.2d 1035 (Pa.Cmwlth. 2005).

7. Quoting from *Hromisin*, in *Baechtold*, 804 A.2d at 716–717, we stated:

[I]n 1982 our legislature amended the [various acts relating to property assessment], and in so doing established a mechanism which both enforces this minimum constitutional level of uniformity, and obviates the necessity for taxpayers to resort to expensive expert analyses in order to maintain a uniformity challenge. The General County Assessment Law now defines the common level ratio, as "the ratio of assessed value to current market value used generally in the county as last determined by the State Tax Equalization Board pursuant to the act of June 27, 1947, P.L. 1046,

No. 447, referred to as the State Tax Equalization Board Law." Section 102 of the Act of May 22, 1933, P.L. 853, as amended, 72 P.S. § 5020–102. The [STEB Act] mandates the STEB Board to calculate the average common level ratio of assessed to actual market value for each county on an annual basis, using data from all arms' length sales transactions during the relevant period, supplemented by independent appraisal data and other relevant information. The Assessments Law ["The Second Class A and Third Class County Assessment Law," Act of June 26, 1931, P.L. 1879, as amended, 72 P.S. §§ 5342–5350k (FN4)] further provides that if the predetermined ratio applied by the taxing authority varies by more than 15% from this STEB common level ratio, the court is mandated to apply the STEB common level ratio to the fair market value to calculate the assessed value of the property. 72 P.S. § 5350(a.1). *Id.*, 719 A.2d at 818 (footnotes omitted.)

ed. It requires a showing through expert testimony that the property owners' property is improperly assessed based on a statistical model that compares the subject property's ratio of assessed value to market value to the same ratio to all properties in the entire taxing district, not just the properties in the neighborhood and certainly, as here, not based on a single property. *Hromisin v. Board of Assessment Appeals of Luzerne County*, 719 A.2d 815 (Pa.Cmwlth.1998). Finally, again with that same assumption and ignoring that no expert study was conducted or offered based on the entire taxing district, Property Owner failed to compare his assessment to the fair market value of the Ericsson property which was necessary for the trial court to determine if "uniformity" was violated. "Where a property owner presents proof of assessments of comparable properties but fails to offer any evidence as to market value, the property owner cannot sustain his burden of proof as a matter of law in that the common pleas court has no information upon which to make a finding as to the current market value and apply the established predetermined ratio to determine the issue of uniformity." *Albarano v. Board of Assessment and Revision of Taxes and Appeals, Lycoming County*, 90 Pa.Cmwlth. 89, 494 A.2d 47, 49 (1985). *See also Gitney v. Berks County Bd. of Assessment Appeals*, 160 Pa.Cmwlth. 647, 635 A.2d 737 (1993).

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this *30th* day of *December,* 2005, the order of the Court of Common Pleas of Wayne County, dated May 13, 2005, is affirmed.