IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Mina Mishrikey and : 
Leslie Mishrikey :
:
From a Decision of: The Board of : No. 1222 C.D. 2023
Revision of Taxes :
: Submitted: March 4, 2025
Appeal of: Mina Mishrikey and :
Leslie Mishrikey :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE McCULLOUGH                    FILED: April 7, 2025


Mina and Leslie Mishrikey (Appellants) appeal from the October 30, 2023 order entered by the Court of Common Pleas of Philadelphia County (trial court), which affirmed the decision of the Philadelphia Board of Revision of Taxes (Board) denying Appellants' property tax assessment appeal. After careful review, we affirm in part and reverse in part.

## I.     Background and Procedural History

Appellants, together with their trust, own a single-family home located at 2517 Panama Street (Property) in the City of Philadelphia (City). (Reproduced Record (R.R.) at 34a.) In 2019, the City conducted a county-wide reevaluation of property values for the purpose of property tax assessments. During the reassessment, the Office of Property Assessment (OPA) set the 2020 assessment of the Property at $1,744,400. *Id.* at 35. Also in 2019, Appellants filed a timely appeal to the Board of the 2020

assessed value of the Property on the basis of non-uniformity,[1] seeking to reduce its assessed value from $1,744,400 to $1,338,222. (Appellants' Br. at 4.) In June of 2021, the Board conducted a hearing and on August 18, 2021, it issued its decision denying the appeal. (R.R. at 1a.) Pursuant to statute, the tax years of 2021 and 2022 were automatically incorporated into the appeal so that the Board's decision covers the 2020, 2021, and 2022 tax years.[2] *Id.* Because the City undertook no reassessment for those tax years, the appealed assessment remained $1,744,400 for all three tax years. *Id.* at 33a. During the pendency of the appeal before the trial court, the City conducted a county-wide property tax reassessment, sending notices in 2022 effective for tax year 2023. During this process, the City adjusted the assessment of the Property to $1,879,200 for tax year 2023. *Id.* at 33a. No reassessment was conducted for 2024. Therefore, as of March 31, 2023, the Property's assessment was certified at the same amount for 2024. (Appellee's Br. at 7.)

The trial court, which heard the case *de novo*, held a bench trial on May 11, 2023. (R.R. at 33a.) At trial, the City submitted evidence of the assessed values of the Property for the years 2020 through 2023, thus establishing its *prima facie* case for the validity of the assessment. *Id.* Appellants indicated to the trial court that they

---

[1] Article VIII, section 1 of the Pennsylvania Constitution requires that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. "In order to comply with article VIII, taxes must be applied to similar property uniformly with substantial equality of the tax burden placed upon all members of the same class." *Fosko v. Board of Assessment Appeals, Luzerne County*, 646 A.2d 1275, 1278 (Pa. Cmwlth. 1994) (citations omitted). "Consequently, no taxpayer should pay more than his or her fair share of the cost of government . . . ." *Id.* at 1278-79.

[2] *See* Section 518.2 of the General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of December 13, 1982, P.L. 1160, 72 P.S. § 5020-518.2. The Assessment Law was repealed in part insofar as the Assessment Law relates to second class A and third, fourth, fifth, sixth, seventh, and eighth class counties. *See* 53 Pa.C.S. § 8801-8868.

intended to argue the issue of uniformity in their appeal. *Id.* Appellants then submitted as evidence a set of photographs of the Property and 10 neighboring properties on the same block as Appellants' Property labeled as Exhibit P-1. *Id.* They also submitted a document reflecting the public record of the most recent sales of the ten neighboring properties as well as those properties' assessment values, labeled Exhibit P-2. *Id.* at 31a & 33a. Appellants then tendered Exhibit P-3, which included the reassessment values for the 10 neighboring properties for 2023.[3] *Id.* at 33a-36a.

Appellants then called Mr. Mishrikey as their sole witness, who testified that he purchased the Property in April of 2017 for $1,600,000 and that his property tax assessments have changed over the years. *Id.* at 34a. He further testified that Exhibit P-1A through P-1L were a series of photographs that he took of ten houses on the same block as the Property. He further testified that each of the houses on the block had been built in 2003 or 2004, that they are structurally identical except that some are mirror images of each other, and that they were all built at the same time by the same builder. *Id.* at 35a. Finally, he testified that the most recent house sale on the block occurred at the end of 2018 for a price of $2,250,000. *Id.*

Mr. Mishrikey further testified that in 2019, the Property was assessed at $1,688,100 and that the neighboring house that sold for $2,250,000 was assessed at $1,208,400 in 2019. *Id.* Mr. Mishrikey testified that he believed that the assessment of his Property was too high relative to the market value of his Property and that in 2019, 2020, 2021, and 2022, the other allegedly comparable properties were under assessed relative to their market value. *Id.* at 36a. On cross-examination, Mr.

---

[3] The City stipulated to the authenticity of Exhibits P-1 and P-2. The City initially objected to the admissibility of Exhibit P-3 on the basis of relevance, but the trial court overruled the City's objection. (R.R. at 34a.)

3

Mishrikey acknowledged that the last sale of the Property occurred on February 18, 2021, and was a sale from his trust to him for the price of $0 and that another house on the same street as his Property had most recently sold for $1. *Id.* at 37a. After Appellants rested their case and moved their Exhibits into evidence, the City stated that it would not be entering any evidence but rather would make its legal argument. *Id.* at 38a.

The City asserted that Appellants failed to sustain their burden of proof because they did not present sufficient evidence of the market value of the Property for the relevant years. The only evidence of the market value for the Property was the initial sale of the house to Appellants in 2017. *Id.* at 39a. However, the City disputed the relevance of that evidence stating that the Assessment Law requires the court to examine sales in one of the taxable years or sales in the base years. *Id.*

The City also asserted that Appellants had failed to provide relevant evidence related to the current fair market value of the comparable properties and that this lack of information made it impossible to determine the ratio of market value to assessed value for those properties. *Id.* at 39a-40a. Appellants' evidence of the fair market value of the comparable properties in 2020 consisted of the prices obtained in a 2002 sale, a 2004 sale, a 2008 sale, a 2009 sale, a 2015 sale, a 2016 sale for $1 and a 2018 sale for $2,250,000. The City argued that only the last of those sales provided any evidence of the fair market value of any of the allegedly comparable properties in 2020 because the earlier sales were not sufficiently recent. The City also argued that the houses selected as comparable properties represented an insufficient sample size to determine a ratio of assessed value to fair market value. *Id.* at 40a.

On October 30, 2023, the trial court entered an order with accompanying findings of fact and conclusions of law. In its conclusions of law, the trial court made

4

the following points. First, it stated that Appellants' evidence, which was limited to a single block of Panama Street and focused on a group of 10 houses, was simply insufficient as a matter of law to evaluate its valuation under the principle of uniformity. Secondly, it stated that Appellants' evidence was clearly selective and limited for the purpose of providing comparisons that were superficially more favorable to their position, but insufficient in scope to show the common assessment that prevails in the district as a whole. The trial court concluded that, in the absence of sufficient evidence, it was constrained to sustain the decision of the Board. The trial court then issued an order increasing the assessment for the Property to $2,250,000 for tax years 2020-2024. *Id.* at 2a-4a.

## II.    Issues

On appeal to this Court, Appellants raise two issues. First, they assert that the trial court exceeded its authority when it raised the property tax assessment for tax years 2020-2024 even though the only tax years appealed were 2020-2022, and the City and the Board did not file a separate appeal for those years. (Appellants' Br. at 2.) Second, Appellants argue that the trial court erred when it failed to find that their property tax assessment violated the principle of uniformity because the evidence shows the ratio of the assessed value to fair market value of the Property was approximately 1.0:1.0 in 2018 and again in 2023, but for tax years 2020-2022, it was approximately 1.3:1.0. *Id.* at 3.

## III.    Discussion[4]

### A.  *Legal Principles Applicable in Assessment Appeals*

---

[4] "Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated." *Aetna Life Insurance Company v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 278 n.2 (Pa. Cmwlth. 2015) (citation omitted).

The standard for a uniformity challenge is that the court should apply the same ratio of assessed value to market value to a property whose assessment is being challenged as pervades the taxing jurisdiction in which said property is located. *See, e.g., Deitch Co. v. Board of Property Assessment, Appeals & Review of Allegheny County*, 209 A.2d 397, 401 (Pa. 1965). "A taxpayer will be entitled to relief under the Uniformity Clause if he demonstrates that his property 'is assessed at a higher percentage of market value than other properties throughout the taxing district.'" *Smith v. Carbon County Board of Assessment Appeals*, 10 A.3d 393, 401 (Pa. Cmwlth. 2010) (quoting *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194, 199 (Pa. 2006)).

In reviewing a trial court's disposition of a property tax assessment appeal, the following principles apply:

> In an assessment appeal, the trial court hears the matter *de novo* and accordingly, is the ultimate finder of fact. In exercising its role as fact-finder, the duty of the trial court is to determine the property's current market value on the basis of competent, credible, and relevant evidence. (internal citations omitted.)

> Stated differently, the function of the trial court in a tax assessment case is not to independently value the property, but to weigh the conflicting testimony and values . . . . and arrive at a valuation . . . . Significantly, the trial court has exclusive province over all matters of credibility and evidentiary weight, and its findings will not be disturbed if they are supported by substantial evidence in the record.

*In Re Appeal of Hawknet Properties*, 320 A.3d 849, 857 (Pa. Cmwlth. 2024) (quoting *Aetna*, 111 A.3d at 279 (internal citations omitted)).[5]  In the City, the "Actual Value Initiative," 53 Pa.C.S. § 8565, requires property to be assessed at current fair market value as of the assessment date.[6]

The order of the presentation of evidence in a tax assessment appeal is also well settled.

> In a *de novo* proceeding in a tax assessment case, the taxing authority bears the initial burden of establishing its *prima facie* case for the validity of the assessment.  This is typically done by presenting official assessment records and the testimony of an assessment officer.  The burden then shifts to the taxpayer to respond with *credible, relevant* evidence to persuade the court of the merits of his position.  If the taxpayer fails to do so, then the taxing authority prevails.  If the taxpayer meets his burden, then the court may no longer presume the taxing authority's assessments are correct.

*Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011) (emphasis in original) (citations omitted).  Where a taxpayer mounts a uniformity challenge to a property tax assessment, we have described the taxpayer's burden as follows:

> Where a taxpayer claims that an assessment violates the principle of uniformity, the taxpayer admits that the fair market value assigned to his or her property is correct but that other comparable properties are assigned a substantially lower fair market value and when the ratio is applied to that lower value, the owners of the comparable properties pay less

---

[5] "Because the court of common pleas conducts a *de novo* hearing on the issues, when a real estate assessment is appealed to this court, we do not review the board's determination; we review the determination of the court of common pleas." *Chartiers Valley School District v. Board of Property Assessment, Appeals & Review*, 622 A.2d 420, 427 (Pa. Cmwlth. 1993).

[6] The term "actual value" means the market value, and market value has been defined as a price which a purchaser, willing but not obliged to buy, would pay an owner willing, but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. *Deitch*, 209 A.2d at 400.

7

than the complaining taxpayer. An assessment is considered [*prima facie*] valid where the assessment record is admitted into evidence, and the taxpayer has the burden to rebut the assessment's validity.

A taxpayer could satisfy his or her burden by producing evidence establishing the ratios of assessed values to market values of comparable properties based upon actual sales of comparable properties in the taxing district for a reasonable time prior to the assessment date. A taxpayer may also meet his burden by offering assessments of comparable properties so long as the taxpayer also presents evidence to show the actual fair market value of the comparable properties is different than that found by the taxing authority. **However, this Court has stated that without current market value information regarding the comparable properties, the court has no basis upon which to determine the issue of uniformity.**

*Smith*, 10 A.3d at 400-01 (quoting *Fosko*, 646 A.2d at 1279 (emphasis added)).

*B. Whether the Trial Court Exceeded Its Authority in Raising the Property Assessment for Tax Years 2020-2024*

Appellants argue that the trial court exceeded its authority when it raised the Property assessment for tax years 2020-2024 even though (i) the only tax years appealed were 2020-2022; and (ii) the City and Board did not file a separate appeal for tax years 2023-2024. (Appellants' Br. at 2-3.) Appellants assert that the trial court had no jurisdiction over tax years 2023-2024 because neither they nor the City expressed any interest in changing the assessment for those years. Appellants also argue that based on the record, the trial court had no authority to raise the Property's assessed value for any of the years between 2020-2024 because the City advised the trial court that it was not seeking an increase in the assessment for any year, let alone 2023-2024. *Id.* at 10. They contend that at the trial court hearing, when the City read into the record the Property's assessments for tax years 2020-2023, Appellants specifically advised the

8

trial court that they were "not challenging 2023." *Id.* Appellants further note that the Board's order which they appealed to the trial court did not change the assessment for the Property. *Id.* at 9.

Appellants also argue that the trial court's order raising the assessment of the Property to $2,250,000 for the five-year period from 2020-2024 was unreasonable because it was based entirely on the November 2018 sale price of a neighboring property, 2503 Panama Street. *Id.* at 10. Appellants' final argument is that the trial court's decision is internally contradictory because it both purports to affirm the Board and, simultaneously, increases the Property's assessment values for tax years 2020 through 2024. *Id.* at 11.

We find no merit in Appellants' claim that the trial court lacked authority to determine the actual value of the Property for tax years 2023-2024. Section 518.1(b)[7] states:

> [I]f a taxpayer has filed an appeal from an assessment, **so long as the appeal is pending before the [B]oard or before a court on appeal from the determination of the [B]oard,** as provided by statute, the appeal **will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the [B]oard and prior to the determination of the appeal by the [B]oard or the court. This provision shall be applicable to all pending appeals as well as future appeals.**

72 P.S. § 5020-518.1(b) (emphasis added).

This rule is known as an automatic appeal provision. In *Chartiers Valley,* this Court construed similar language and found that "the palpable intent of the automatic appeal provision is twofold—the elimination of duplicative appeals and the consolidation of subsequent tax assessments with those originally appealed for trial purposes." 622 A.2d at 425. We further stated:

---

[7] Act of May 22, 1933, P.L. 853, art. V, § 518.1, was added by the Dec. 28, 1955, P.L. 917.

> [S]o long as the real estate tax assessment appeal is pending before the board or a court of common pleas, the case lies in a forum where the parties can present evidence on any change in value which is relevant to the subsequent tax assessments that automatically become part of the appeal. This fact serves a key purpose of the statute; one trial determines the issues being contested for tax assessments so long as the parties remain able to present relevant evidence.

*Id.* at 426.

Finally*,* the *Chartiers Valley* Court adopted the following points relating to the construction of the language "so long as the appeal is pending before the [B]oard or before a court on appeal from the determination of the [B]oard." Those points are:

1. So long as the real estate appeal is pending before the board or the court of common pleas, all subsequent tax assessments are incorporated. Once the case has come before the court of common pleas, that court must hear evidence and decide all properly presented issues relevant to all the tax assessments incorporated into the appeal.

2. When the subsequent assessments have thus been incorporated into the proceedings before the common pleas court, that court has no authority to remand them for initial consideration by the board because such fragmentation would violate the trial consolidation intent of the statute.

3. For the same reason, the trial court cannot sever proceedings before it by deferring any incorporated subsequent assessment for later trial.

*Chartiers Valley*, 622 A.2d at 429. Therefore, once Appellants appealed their 2020 tax assessment to the Board and later to the trial court, the trial court had no discretion to forgo incorporating any subsequent assessments into its determination.

As to any evidence presented, we note that during the trial court's consideration of the case, the City provided the Property's assessments for tax years 2020, 2021, 2022, and 2023. (R.R. at 33a.) Appellants also entered evidence into the

record for tax years 2020, 2021, 2022, and 2023 for the allegedly comparable properties. *Id.* at 35a-36a. During the pendency of the appeal, the City conducted a county-wide reassessment for tax year 2023, during which it assessed Appellants' property at $1,879,200. *Id.* at 33a. Pursuant to Section 518.2(b)(2) of the Assessment Law, 72 P.S. § 5020-518.2(b)(2), once the trial court determined that Appellants had not established their own ratio, it was able to determine the proper assessment for 2024 because on March 31, 2023, the 2024 assessment was certified as being the same amount as the 2023 assessment. (Appellee's Br. at 7, 19-21.) Therefore, we find that the trial court heard and considered relevant evidence relating to the proper assessments for all tax years through 2024 and properly included those years in its order. However, we must next consider the amount of the assessments which the trial court determined.

When Appellants introduced market value evidence for the properties they claimed were comparable to their Property, the only evidence of a recent sales price presented to the trial court for the allegedly comparable properties on the block was the sales price for the 2018 sale of the house at 2503 Panama Street. When counsel for the City questioned Mr. Mishrikey about the house located at 2503 Panama Street, Mr. Mishrikey testified that the assessed market value of Appellants' Property was higher in 2020 than the assessed market value for the house at number 2503. He also testified that Appellants' Property sat on a larger piece of land than did the house at 2503 and that the assessed value of both the land and the improvements for Appellants' Property was higher than the assessed value of the land and the assessed value of the improvements for the house at 2503. (R.R. at 35a-36a.)

During the trial court proceeding, the City and the Board established the *prima facie* validity of their assessments by placing into evidence the amounts they calculated for the relevant years, which were $1,744,400 for tax years 2020, 2021, and

11

2022 and $1,879,2000 for tax year 2023. *Id.* at 33a. At that point, the burden of proof then shifted to Appellants to produce sufficient competent, credible, and relevant evidence to overcome the assessment's *prima facie* validity. *See Deitch.* However, Appellants introduced <u>no</u> competent evidence into the record relating to the fair market value of its Property to rebut the Board's assessed values. With respect to the allegedly comparable properties, Appellants introduced into evidence the 2018 sale price of one of the properties, but the trial court concluded that this sale was "<u>not sufficient to determine the fair market value of the property that was itself sold</u>." (R.R. at 3a.) The trial court also found that "[t]he photographs [of this and other allegedly comparable properties] show only the outside of the properties and do not account for improvements to the interior." *Id.* at 2a. In addition, no evidence was provided regarding the circumstances surrounding the sale of the allegedly comparable property at 2503 Panama Street. *Id.* at 29a.

Given the trial court's determination of the inadequacy of this sale for the purpose of establishing the fair market value of any of the allegedly comparable properties, we cannot agree with the trial court's use of such as a sole basis to establish the fair market value of Appellants' Property for the purpose of increasing Appellants' property assessments. Therefore, the trial court's finding that "the sale does provide evidence of fair market value" for Appellants' Property is inconsistent with its finding that the sale price of the allegedly comparable property did not provide "sufficient evidence to establish the fair market value" of the property that was in fact sold. *Id.* at 3a. We note that our Supreme Court has held that the price received for a property at sale is not necessarily an adjudication of the actual value of such property for purposes of taxation, especially when the details of the circumstances surrounding the sale are not known. *See In re Premises 255-57 South Fifteenth Street*, 192 A. 923 (Pa. 1937);

12

*see also Appeal of Secretary of Banking*, 49 A.2d 337, 338 (Pa. 1946). In addition, we find the trial court's analysis is also inconsistent with its third Conclusion of Law, which states that "[i]n the absence of sufficient evidence, the court must sustain the decision of the Board." R.R. at 3a. For these reasons, we cannot agree with the trial court's finding with respect to the fair market value of the Property, and we reverse the trial court's finding in this regard.

### C. *Whether the Trial Court Erred by Failing to Find the Property's Tax Assessment Violated the Principle of Uniformity*

Appellants' remaining argument is that the trial court erred when it found that the uniformity principle was not violated given that between 2020 and 2022, the ratio of the assessed value to the fair market value of their Property was approximately 1.3:1.0. Appellants argue that between 2019 and 2022, the City raised the fair market value of the Property by a total of approximately $400,000 more than it raised the average market value of neighboring properties.[8]

We note that the trial court did not find that the principle of uniformity was not violated but rather found that "[Appellants'] evidence, limited to a single block of Panama St[reet] and focused on a group of ten houses is simply insufficient as a matte[r] of law for this court to evaluate the valuation under the principle of uniformity." *Id.* It also found that "[Appellants'] evidence was clearly selective and limited for the purpose of providing comparators that are superficially more favorable to their position, but insufficient in scope to show the common assessment that prevails in the district as a whole." *Id.*

---

[8] Appellants concede that this uniformity error was corrected in 2023. (Appellants' Br. at 12.)

13

## 1. The Trial Court's Analysis of Uniformity

The trial court made clear that Appellants failed to prove either 1) that the other houses in the neighborhood were comparable properties to Appellants' Property, or 2) the current fair market value of those properties. On the issue of whether the other houses on Appellants' block were comparable properties, the trial court found that "the photographs [of the allegedly comparable properties] only show the outside of the properties and do not account for improvements to the interior . . . ." *Id.* at 2a. It also stated that the court did not "deem the photographic evidence convincing." *Id.* In sum, the trial court found that Appellants had not proven the fair market value the allegedly comparable properties; that the sample size of the allegedly comparable properties was insufficient as a matter of law; and that it was therefore constrained to sustain the decision of the Board. *Id.* at 2a-3a.

## 2. Analysis

In *Deitch*, our Supreme Court held that a taxpayer could prove a violation of the uniformity principle by "produc[ing] evidence regarding the ratios of assessed values to market values as the latter are reflected in actual sales of any other real estate in the taxing district for a reasonable period prior to the assessment date." *Deitch*, 209 A.2d at 223; *see also Smith*, 10 A.3d at 400-01 (quoting *Fosko*, 646 A.2d at 1279)). With this type of evidence, the trial court can determine the appropriate ratio of assessed value to market value which exists in the county. Once a court has determined the proper ratio, it can then "apply the ratio thus found to the market value of the property in order to arrive at the proper assessment." *Deitch*, 209 A.2d at 224. *See also Downingtown*, 913 A.2d at 205 (holding that in order to succeed in a uniformity

14

challenge by proving one's own ratio, the taxpayer must prove the actual market value of properties comparable to its own property).[9]

Here, Appellants provided evidence which they assert proves the fair market value of the allegedly comparable properties. However, Appellants' evidence included only the sales prices obtained in a 2002 sale, a 2004 sale, a 2008 sale, a 2009 sale, a 2015 sale for $1, a 2016 sale, and a 2018 sale. (R.R. at 29a-30a.) The trial court found that only one of these sales, the 2018 sale, occurred within "a reasonable period prior to the assessment date." *Id.* at 3a. The other sales were too remote in time to provide credible evidence of the fair market value of the allegedly comparable properties for the year 2020. *See Fosko*, 646 A.2d at 1280 (holding that evidence of simply listing prices of comparable properties did not satisfy taxpayer's burden of proof); *Gitney v. Berks County Board of Assessment Appeals*, 635 A.2d 737 (Pa. Cmwlth. 1993) (holding that where taxpayer produced only evidence of assessed values of comparable properties, the evidence was insufficient to meet taxpayer's burden of proof).

In addition, the houses selected by Appellants as comparable properties represented an insufficient sample size to use to determine a ratio of assessed value to fair market value for the taxing jurisdiction as a whole. *Id.* at 40a. In *Deitch*, our Supreme Court stated:

> [A] taxpayer is not entitled to have his assessment reduced to the lowest ratio of assessed value to market value to which he could point in the taxing district if such lowest ratio does not reflect the common assessment level which prevails in the district as a whole. . . . The rational . . . [for this] is that a property owner is not entitled to have a property assessed at a rate comparable to what has been done in the instances of a

---

[9] Under Section 518.2(b)(2) of the Assessment Law and the Actual Value Initiative, 53 Pa.C.S. § 8565, in the event Appellants were unable to prove their own ratio, the trial court was obligated to use the 100 percent Predetermined Ratio, or EPR, for tax years 2020 through 2024 because a county-wide revision of property tax assessments took place in 2019. *Id.*

few properties out of a total of more than 30,000 properties, where the evidence shows that the underassessments are not representative of the district as a whole, and that the taxpayer has, in fact, not been assessed at more than the common level in the district.

*Deitch*, 209 A.2d at 401.

> Similarly, in *Smith*, this Court explained:
> [A] taxpayer is entitled only to have his assessment conform with the common level existing in the district, not with a small sample of properties being taxed at a lower than average level. The teaching of *Deitch, Downingtown,* and *Clifton* [*v. Allegheny County*, 969 A.2d 1197 (Pa. 2009),] clearly establish that the Uniformity Clause entitles a taxpayer to pay no more than his fair share; it does not give him a right to pay less. Moreover, to reduce an assessment below the average to that demonstrated by a few comparables or demonstrated to exist in a particular neighborhood would only serve to exacerbate a lack of uniformity in the district overall.

*Smith*, 10 A.3d at 407.

Here, Appellants presented evidence relating to 10 properties to prove the ratio of assessment values to fair market values that prevails in Philadelphia County as a whole. We note that in *Deitch*, the Supreme Court explained in its discussion of *In re Appeal of Rick*, 167 A.2d 261 (Pa. 1961), that a sample size of 76 homes was not sufficient in that case to show that the ratio advocated for by the taxpayers, which was 35 percent, prevailed throughout the taxing district, the City of Reading. *See Deitch*, 209 A.2d at 401. Here, Appellants offer a significantly smaller sample of allegedly comparable properties in what is a much larger taxing district.

We discern no error with the reasoning or findings of the trial court on this issue. Appellants failed to establish the market value of the allegedly comparable properties and also limited their uniformity analysis to a small number of neighboring

16

properties. As this Court has previously held, "where a taxpayer challenging the uniformity of his property tax assessment fails to introduce evidence establishing the current market value of the comparable properties with which he is comparing his own, the taxpayer has not, as a matter of law, carried his burden of proof to rebut the presumed validity of the taxing authority's assessment." *Smith*, 10 A.3d at 401 (citing *Fosko* and *Albarano v. Board of Assessment & Revision of Taxes & Appeals, Lycoming County*, 494 A.2d 47 (Pa. Cmwlth. 1985)). As such, the trial court correctly found Appellants' evidence was "insufficient in scope to show the common assessment that prevails in the district as a whole," (R.R. at 3a), and that Appellants failed to carry their burden of proof on the issue of uniformity.

## IV. Conclusion

The trial court's October 30, 2023 Order is affirmed to the extent it found that Appellants failed to carry their burden of proof on the uniformity issues and reversed in part as to the increase in the assessment of Appellants' Property.

_____
PATRICIA A. McCULLOUGH, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Mina Mishrikey and : 
Leslie Mishrikey :
:
From a Decision of: The Board of : No. 1222 C.D. 2023
Revision of Taxes :
:
Appeal of: Mina Mishrikey and :
Leslie Mishrikey :

## *__ORDER__*


AND NOW, this 7th day of April, 2025, the October 30, 2023 Order of the Court of Common Pleas of Philadelphia County is affirmed in part with respect to its finding that Mina Mishrikey and Leslie Mishrikey (Appellants) failed to carry their burden of proof on uniformity issues and reversed in part as to the increase in the assessment of Appellants' property.


_____
PATRICIA A. McCULLOUGH, Judge